[Crim. No. 35830. Second Dist., Div. Five. Aug. 11, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEE HENDERSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Carole S. Morita, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KAUS, P. J.**—After two jury trials defendant was found guilty of attempted robbery, assault by means of force likely to produce great bodily injury, burglary, receiving stolen property and obliteration of identification of a firearm, a violation of section 12090 of the Penal Code.[1] Sentenced to prison, he appeals.

---

[1]All five crimes were charged in a single information. The first jury convicted defendant on the receiving and obliterating counts, but was unable to agree on the robbery, assault and burglary charges.

FACTS

At 8 p.m. on March 23, 1979, defendant staged a remarkably unsuccessful robbery at a home where Doctor Richard Young was doing carpentry work at the time. Doctor Young stunned defendant with his hammer, took possession of a revolver with which defendant had threatened him and called the police.

Two officers arrived, arrested defendant and seized the revolver. It was loaded and additional rounds of ammunition were found on defendant's person.

The revolver had been stolen by an unidentified burglar from the home of one Robert Polhamus 11 days earlier, at which time it had a serial number on the butt end. When taken from defendant, the serial number had been obliterated. Polhamus was, however, able to identify the revolver by a nick on the handle.

The defense was that on May 23 defendant had called at the home in question thinking that it was for rent. He got into an argument with Doctor Young and was ready to walk away, when he was struck on the head. He lost consciousness. Asked whether he had a gun at the time the answer, as reported, was: "No, not I recall."

DISCUSSION

■ On appeal defendant contends first, that the court improperly instructed the jury on the presumption contained in section 12091 of the Penal Code and, second, that in sentencing him the court committed various violations of section 654 of that code.[2]

Section 12090 makes it a felony to change, alter, remove or obliterate the manufacturer's number from any pistol or revolver. Section 12091 declares that "[p]ossession of any pistol or revolver upon which the... manufacturer's number...has been changed, altered, removed or obliterated, shall be presumptive evidence that the possessor has changed, altered, removed or obliterated the same."

The trial court instructed the jury as follows: "Possession of any pistol or revolver upon which the name of the maker, model, manufactur-

[2]Unless otherwise noted, all statutory references are to the Penal Code.

er's number or other mark of identification has been changed, altered, removed, or obliterated, shall be presumptive evidence that the possessor has changed, altered, or obliterated the same unless from all the evidence there is a reasonable doubt to rebut this presumption."

The People and defendant do not agree just what this instruction told the jurors. Defendant asserts that it compelled the jury to find the presumed fact—obliteration—from the proved fact—possession—unless defendant himself came forward with evidence to rebut the presumption. The People, on the other hand, deny that the instruction had any mandatory effect and claim that it permitted the jury not to find the presumed fact even if no evidence on the identity of the obliterator other than the proved fact of possession was before it.

We think both sides are wrong. Preliminarily we are bound to say that as a means of communicating with a jury, the instruction leaves a lot to be desired. What is a lay juror to do with a charge that one fact "shall be presumptive evidence" of another? What evidence does it take to create a reasonable doubt "to rebut [a] presumption," which is not evidence at all, but a rule of law? (See Evid. Code, § 600 and com. thereto.)

Leaving draftsmanship aside and turning to the contentions of the parties, we think defendant is quite wrong in arguing that the jury was told that the presumption could be rebutted only by evidence produced by the defense. The words "all the evidence" were presumably understood to mean just that. Conversely, we cannot agree with the People that the instruction merely told the jury that obliteration was a permissible inference it could draw from possession. "Shall be presumptive evidence" sounds mandatory to us.[3] If all that the court meant to say was that the jury could infer obliteration from possession, what would have been the point of using such words as "shall," "presumptive evidence" and "presumption?" Why instruct at all? In sum, we think that the jury was told that it must find obliteration if it finds possession, unless other evidence concerning the identity of the obliterator—regardless of its source—created a reasonable doubt that the culprit was defendant.

---

[3]Even if the words "shall be presumptive evidence" are ambiguous on whether they mandate a finding of the presumed fact, we cannot speculate that the jury gave them the benign meaning contended for by the People. (Cf., *People v. Deloney* (1953) 41 Cal.2d 832, 839 [264 P.2d 532]; *People v. Carmen* (1951) 36 Cal.2d 768, 778 [228 P.2d 281].) The trial court's instructions did not define the words "presumption" or "presumptive."

The real question is whether the presumption, as it was conveyed to the jury, complied with recently recognized constitutional requirements.

The constitutionality of the presumption at issue here was before the California Supreme Court in *People* v. *Scott* (1944) 24 Cal.2d 774, 784 [151 P.2d 517]. Applying the then recent test of *Tot* v. *United States* (1943) 319 U.S. 463, 467-468 [87 L.Ed. 1519, 1524, 63 S.Ct. 1241]— whether there was a "rational connection" based on "common experience," between the fact proved and the fact presumed—the California Supreme Court found the presumption valid. The holding was followed in *People* v. *Nelson* (1969) 2 Cal.App.3d 738, 741 [83 Cal.Rptr. 6] and *Marchese* v. *State of California* (9th Cir. 1976) 545 F.2d 645, 647. *Marchese* is of significance because it was decided after the United States Supreme Court had tightened the *Tot* standard somewhat by holding, in *Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532] that "a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend...." (*Id.*, p. 36 [23 L.Ed.2d at p. 82].)

In a footnote which immediately follows the quoted portion of the *Leary* opinion, the court noted that since the presumption involved in that case was unconstitutional under the announced standard, it did not "reach the question whether a criminal presumption...must...satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." (*Leary* v. *United States, supra*, 395 U.S. at p. 36, fn. 64 [23 L.Ed.2d at p. 82].)

The problem which the court avoided in *Leary*—the relevance of the reasonable doubt concept to criminal statutory presumptions—became acute as far as the states are concerned when, a year later, in *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], the Supreme Court held that the reasonable doubt standard was applicable to the states by way of due process. Obviously *Winship* threatens any state criminal conviction in which proof of an element of the offense depends on a presumption, unless a rational trier of fact could find beyond a reasonable doubt that the presumed fact follows from the basic fact. (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573-574, 99 S.Ct. 2781].)

Many of the questions raised by the introduction of the reasonable doubt concept into the field of presumptions were answered in *Ulster County Court* v. *Allen* (1979) 442 U.S. 140 [60 L.Ed.2d 777, 99 S.Ct. 2213]. At least two rules vital to a resolution of the present appeal emerge from that decision. First, the court held that "in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, *to find the ultimate facts beyond a reasonable doubt....*" (*Id.,* p. 156 [60 L.Ed. 2d, p. 791]. Italics added.) Therefore, in any case in which the jury is informed that it must find the presumed fact if it finds the basic fact, the presumption is invalid "unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt...." (*Id.,* p. 167 [60 L.Ed.2d, p. 798].)

The second rule which emerges from *Ulster County* is that where the jury is instructed that a presumption is mandatory,[4] the validity of the presumption under the reasonable doubt standard is judged by the presumption "on its face." It is immaterial that together with the facts of the particular case under consideration the basic fact might prove the presumed fact beyond a reasonable doubt. This is so because the jury's verdict may rest entirely on the mandatory effect of the presumption. Hence it must meet the reasonable doubt standard without any support from facts the jury may disregard or positively disbelieve. "To the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases. [Fn. omitted.] It is for this reason that the Court has held it irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction...." (*Id.,* pp. 159-160 [60 L.Ed.2d, pp. 793-794].) The wisdom of this rule is dramatically illustrated by the facts of this very case, in which the jury found defendant guilty of having violated section 12091, but was unable to agree that he possessed the weapon during a burglary and while attempting an armed robbery.[5]

---

[4]As far as California usage is concerned, the term "mandatory presumption" is redundant. (Evid. Code, § 600, subd. (a).)

[5]The California Supreme Court said much the same in *People* v. *Scott, supra,* 24 Cal.2d at pages 779-780: "The rational connection required between a proved fact and a presumed fact must be distinguished from the relation between a proved fact and an

Applying these rules it is obvious that the court erred in its instruction. Since the language of the instruction was mandatory, we must examine the presumption "on its face" or mirrored against "the run of cases." It seems too clear to warrant extended discussion that possession does not prove obliteration with the strength required by the reasonable doubt standard.[6] Even if the particular circumstances of this case—the recent theft of the gun and its use during an attempted robbery—might arguably lend the necessary strength to the inference, *Ulster County* tells us that we may not consider them.

The only other issue on appeal is conceded by the People: section 654 clearly prohibits multiple punishment on the attempted robbery and burglary counts.

## DISPOSITION

The judgment is reversed as to count 4, the violation of section 12090. It is reversed as to count 1, but only insofar as it imposes a sentence for attempted robbery. In all other respects the judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 8, 1980. Mosk, J., Clark, J., and Newman, J., were of the opinion that the petition should be granted.

---

alleged fact that warrants a jury's inferring the one from the other (*Tot v. United States, supra*, at p. 468). An inference must be justified by the circumstances of the particular case. A statutory presumption, however, designed for general application in a given field and based on a pattern of experience in that field, is justified by the likelihood that the unpredictable circumstances of other cases will fall within the same pattern. The presumption may be invoked if the proved fact is 'at least a warning signal according to the teachings of experience' (*Morrison v. California, supra*, [291 U.S. 82] at p. 90 [78 L.Ed. 664, 670, 54 S.Ct. 281]) of the fact presumed, and 'the evidence held to be inculpatory has at least a sinister significance.' (*Ibid.*, p. 90.)"

[6]Actually, the California Supreme Court in *Scott* never really explained why the presumption in issue satisfied even the *Tot* standard. What it did say was that (1) this presumption is not as "off the wall" as the one rejected in *Tot*; (2) the law has traditionally imposed on the possessor of contraband the burden of explaining how he got it, and (3) since the use of firearms with obliterated marks of identification increases the difficulty of solving crimes, possession of such weapons may be legislatively discouraged and the presumption in question does just that. Reasons (1) and (3) are manifestly inadequate; reason (2) was expressly rejected in *Tot*, except as an adjunct to an otherwise valid presumption.