[No. F012670. Fifth Dist. Feb. 19. 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE DEMOND WANDICK, Defendant and Appellant.

COUNSEL

Philip R. Clarkson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, W. Scott Thorpe and Janet Neeley Kvarme, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BEST, P. J.—

## STATEMENT OF THE CASE

Defendant was convicted by jury of: (1) manufacture of rock cocaine (Health & Saf. Code, § 11379.6, subd. (a)—count one); (2) possession of rock cocaine for sale (Health & Saf. Code, § 11351.5—count two); (3) maintaining a place for the sale of controlled substances (Health & Saf. Code, § 11366—count three); and (4) possessing a firearm with an obliterated identification number (Pen. Code,[1] § 12090—count four). The jury also found in connection with all counts that defendant was armed with a firearm (§ 12022, subd. (a)), and that all offenses were committed while defendant was out on bail for a prior felony (§ 12022.1). The court sentenced defendant to prison for a term of ten years and four months, which

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

included a four-year enhancement pursuant to section 12022, subdivision (b) for the personal-arming allegation attached to count one.

Defendant makes three contentions on appeal: (1) the trial court committed reversible error by instructing the jury that possession of a weapon with a defaced serial number creates the presumption that the possessor defaced the number; (2) the enhancement imposed pursuant to section 12022, subdivision (b) must be reversed because the jury was only instructed in the language of subdivision (a) of that section; and (3) the court erred by instructing the jury could find defendant was "armed" within the meaning of section 12022, subdivision (a) if the weapon was "available."

We will agree with contentions (1) and (2) and remand for resentencing on counts one, two and three only.

## STATEMENT OF FACTS

Bakersfield police officers executed a search warrant at 1825 Virginia Way on January 28, 1989. The officers found four persons in the house including defendant who was in the northwest or master bedroom. The officers seized varying amounts of cocaine and cocaine base from different rooms throughout the house. They also seized cocaine base paraphernalia and manufacturing materials.

In the northwest bedroom, where defendant was standing, officers found a .38 Colt revolver in a holster hanging on the bedpost and a loaded .22-caliber semiautomatic pistol in the drawer of a portable closet in the room. The revolver on the bedpost was in plain view but defendant was not facing the weapon nor did he grab for it when the police entered. The serial numbers on the revolver were defaced.

Defendant had $549 in currency in his pocket and officers found $172.28 in a drawer in the nightstand in the northwest bedroom.

Based on the amount of cocaine and the type and amount of equipment and paraphernalia found, a police officer testified that in his opinion the residence was a "rock house" and that defendant was in the business of selling cocaine from the house.

An officer testified he served a search warrant at the same house on May 7, 1988. Defendant was the only one in the house at the time. The officer seized a small amount of cocaine, cocaine paraphernalia and manufacturing equipment. Documents found in the house indicated defendant lived there.

*Defense*

Defendant testified the Virginia Way house had belonged to his father who died in December 1987. Before defendant moved into the house in September 1988, he had lived next door. He had only been in the house a couple of times between December 1987 and May 1988 but his brothers and sisters had access to the house. When the house was searched in May 1988, he had just entered the house through the back door. He did not know who owned the paraphernalia found that day and could not explain how it came to be in the house. He noticed it for the first time when the officers seized it.

When the house was searched in January 1989, defendant was using the northwest bedroom which he shared with a lady friend. Floyd Wilkerson was staying in the southwest bedroom. Defendant admitted using base cocaine but claimed he was not a dealer or a manufacturer. He did not know who brought the additional paraphernalia to the house. He testified he did not own either of the guns. The .38 revolver with the defaced serial numbers belonged to a friend of his lady friend. He did not remove the identifying numbers. He explained his possession of the large amount of currency by saying he was saving to pay delinquent taxes on the house.

## DISCUSSION

I. *Did the Trial Court Commit Reversible Error by Instructing the Jury That Possession of a Weapon With Obliterated Serial Numbers Creates the Presumption That the Possessor Defaced the Numbers?*

▇▇ Section 12090 makes it a felony to change, alter, remove or obliterate the manufacturer's number from any pistol or revolver. Section 12091 declares:

"Possession of any pistol or revolver upon which the name of the maker, model, manufacturer's number or other mark of identification has been changed, altered, removed, or obliterated, shall be presumptive evidence that the possessor has changed, altered, removed, or obliterated the same."

In this case, there was no direct or circumstantial evidence that defendant altered the identifying numbers on the weapon. However, the trial court instructed the jury:

"Possession of any pistol upon which the manufacturer's number or other mark of identification has been changed, altered, removed or obliterated, shall be presumptive that the possessor has changed, altered, removed or obliterated the same."

The court held in *People v. Henderson* (1980) 109 Cal.App.3d 59 [167 Cal.Rptr. 47] that it was reversible error to give an instruction based on section 12091. The court's conclusion derived from two rules set out in *Ulster County Court v. Allen* (1979) 442 U.S. 140 [60 L.Ed.2d 777, 99 S.Ct. 2213]. ■ First, in a criminal case, a presumption must not undermine the fact finder's responsibility to find the ultimate facts beyond a reasonable doubt, based on evidence adduced by the state. Therefore, in any case in which the jury is instructed it must find the presumed fact if it finds the basic fact, "the presumption is invalid 'unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt . . . .' [Citation.]" (*People v. Henderson, supra*, 109 Cal.App.3d at p. 64.) Second, where the jury is instructed that a presumption is mandatory, the validity of the presumption under the reasonable-doubt standard is judged by the presumption "on its face." It is irrelevant in analyzing a mandatory presumption that there is ample evidence in the record other than the presumption to support a conviction. (*Ibid.*) Since the language of the instruction based on section 12091 was mandatory, the court examined the presumption "on its face" and concluded that possession does not prove obliteration with the strength required to meet the reasonable-doubt standard. (*Henderson, supra*, at p. 65.)

The second rule, that the presumption is tested without regard to the evidence adduced at trial, was superseded by a harmless-error analysis as explained in *Rose v. Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101].

■ The People concede that giving the section 12091 presumption instruction was erroneous but claim the error was harmless under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. They analogize the error in this case to the instructional errors in *Rose v. Clark, supra*, 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] and *People v. Banks* (1983) 147 Cal.App.3d 360 [195 Cal.Rptr. 101]. Both cases are distinguishable.

In *Rose v. Clark*, defendant was charged with the murder of his former girlfriend and her male companion arising from the same incident. He defended on the ground he was either insane or incapable of forming the requisite intent to kill the victims. The court instructed the jury that " '[a]ll homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption' " and that " 'if the State has proven beyond a reasonable . . . doubt that a killing has occurred, then it is presumed that the killing was done maliciously.' " The jury found defendant guilty of first degree murder of one victim and second degree murder of the

other. (*Rose* v. *Clark, supra*, 478 U.S. at pp. 572-574 [92 L.Ed.2d at pp. 467-468].)

The court concluded the malice instruction was unconstitutional under *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450], but the error should be evaluated under the *Chapman* harmless-error standard. (*Rose* v. *Clark, supra*, 478 U.S. at pp. 576-580, 582 [92 L.Ed.2d at pp. 469-473].) The court reasoned that when a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt. In many cases, the predicate facts conclusively establish intent so that no rational jury could find that defendant committed the criminal act but did not intend to cause injury. (*Id*. at pp. 580-581 [92 L.Ed.2d at pp. 471-472].) In those cases where the inference of the requisite intent from the criminal conduct is overpowering, the error is harmless. (*Id*. at pp. 581-582 [92 L.Ed.2d at pp. 472-473].)

The court reached the same conclusion in *People* v. *Banks, supra*, 147 Cal.App.3d 360. There, appellant and a coemployee, Vieyra, stabbed and beat their night supervisor when he interrupted their efforts to steal the company safe. (*Id*. at pp. 362-364.) The jury found appellant guilty of first degree murder, found the special circumstance allegation to be true, but found not true the allegations of personal use of a deadly weapon and great bodily injury. (*Id*. at p. 362.) On appeal, appellant challenged the aiding and abetting instructions given in conjunction with the first degree murder instructions. The instructions failed to tell the jury that an aider and abettor must share the criminal intent of the perpetrator. Appellant argued that such an omission transmutes the instructions into a mandatory presumption of intent, thereby relieving the prosecution of its burden of proving every element of the crime beyond a reasonable doubt. (*Id*. at pp. 364, 368.)

The court held that even if the instruction created a mandatory presumption, any error was harmless. The jury had been instructed that in order to find appellant guilty of first degree murder as an aider and abettor under the theories presented, it had to find that: (1) he knew that Vieyra intended to deliberately kill the supervisor; or (2) he knew Vieyra intended to commit theft and that the killing occurred during the commission or attempted commission of the burglary. Thus,

"It distorts reality to suggest that a jury could reasonably conclude that appellant was acting without intent to aid Vieyra in the commission of the murder when appellant handed Vieyra a knife, put another knife in his own pocket and joined in striking [the supervisor] while Vieyra struck and stabbed him. No evidence supports such a conclusion . . . ." (*People* v. *Banks, supra*, 147 Cal.App.3d at p. 369.)

That is not the case here. It is one thing to infer intent from a criminal act. It is another matter to infer a criminal act (obliteration of identifying numbers) from another act which may or may not be criminal (possession of a weapon with obliterated identifying marks). Even if the jury found defendant possessed the revolver, that fact standing alone is not sufficient to support a finding beyond a reasonable doubt that defendant obliterated the numbers. Since there was no evidence, other than circumstantial evidence of possession, that defendant obliterated the identifying numbers on the revolver, the erroneous instruction cannot be found harmless beyond a reasonable doubt and the conviction on count four must be reversed.

II. *Must the Enhancement Imposed Pursuant to Section 12022, Subdivision (b) Be Reversed Because the Jury Was Only Instructed in the Language of Subdivision (a) of That Section?*

In relation to counts one and two, defendant was charged with "personally armed" enhancements pursuant to section 12022, subdivision (b). In relation to counts three and four, he was charged with "armed" enhancements pursuant to section 12022, subdivision (a). The court instructed the jury in the language of section 12022, subdivision (a) only—the jury must find defendant was "armed" rather than "personally armed." The jury found defendant was "armed with a firearm" in the commission of each offense. Nevertheless, the court enhanced defendant's sentence on count one by four years pursuant to section 12022, subdivision (b).

Defendant contends the four-year enhancement must be stricken because the jury never found he was "personally armed" as required by subdivision (b). The People concede the error but submit the remedy is to impose a one-year enhancement pursuant to section 12022, subdivision (a), which requires only a finding that the defendant was armed. Defendant replies an enhancement under subdivision (a) cannot stand because it was not pleaded as to count one.

At the time of the offense, section 12022, subdivisions (a) and (b) stated:

"(a) Except as provided in subdivisions (b) and (c), any person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year . . . . This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not such person is personally armed with a firearm.

"(b) Notwithstanding the enhancement set forth in subdivision (a), any person who is *personally armed* with a firearm in the commission or attempted commission of a violation of Section . . . 11351.5 . . . or 11379.6 of the Health and Safety Code, shall, upon conviction of that offense and in addition and consecutive to the punishment prescribed for the offense of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years in the court's discretion. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence." (Italics added.)

The defendant is entitled to notice that the People are seeking enhanced punishment. (§ 1170.1, subd. (f); *People v. Neal* (1984) 159 Cal.App.3d 69, 73 [205 Cal.Rptr. 384].) When the facts supporting such enhancement are neither alleged nor found by the trier of fact, the enhancement cannot stand. (*Ibid.*) The four-year enhancement cannot be imposed because the jury did not find defendant was "personally armed," a necessary fact for imposition of a section 12022, subdivision (b) enhancement. (*Neal, supra,* at p. 73; *People v. Najera* (1972) 8 Cal.3d 504, 509, 512 [105 Cal.Rptr. 345, 503 P.2d 1353].) However, as discussed below, defendant's sentence should reflect a one-year enhancement pursuant to section 12022, subdivision (a) as to counts one and two.

In *People v. Neal, supra,* 159 Cal.App.3d 69, defendant was charged with various sex crimes as well as an enhancement for using a deadly weapon, specified in the information as a violation of section 12022, subdivision (b). After the jury found the enhancement true, the trial court sentenced the defendant under section 12022.3, a more specific enhancement provision applying only to enumerated violent sex offenses and carrying a three-year enhancement term rather than the one-year term carried by section 12022, subdivision (b). (*Neal, supra,* at pp. 71-72.) The issue on appeal was whether misstatement of the code section required modification of the judgment to reduce the enhancement to the one pleaded. The court held in the negative. "[W]here the information puts the defendant on notice that a sentence enhancement will be sought, and further notifies him of the facts supporting the alleged enhancement, modification of the judgment for a misstatement of the underlying enhancement statute is required only where the defendant has been misled to his prejudice." (*Id.* at p. 73.) Since defendant made no claim of prejudice and the court could not conceive of any in the circumstances of the case, the enhancements did not have to be modified. (*Id.* at p. 74.)

A similar rationale applies in this case. Defendant was notified that a four-year enhancement would be sought because he was personally armed

with a gun. Facts supporting an enhancement under subdivision (a) were necessarily alleged by virtue of the subdivision (b) allegation. By only requesting the jury be instructed on the findings necessary to support an enhancement under section 12022, subdivision (a), the People, in effect, amended the enhancement allegation to reflect the one-year enhancement for being armed. The jury made the necessary findings for a subdivision (a) enhancement.

Like *Neal*, defendant cannot say that preparation of his defense would have been different if the information had cited section 12022, subdivision (a) rather than (b). Further, defendant is not prejudiced by a lengthier term if his sentence is enhanced pursuant to section 12022, subdivision (a) rather than (b).

Under the principles set forth in *People v. Neal*, we conclude the abstract of judgment should be amended to reflect a one-year enhancement pursuant to section 12022, subdivision (a), as to counts one and two.

III.  *Did the Court Err by Instructing That Defendant Was "Armed" Within the Meaning of Section 12022, Subdivision (a) if the Weapon Was "Available"?*

Defendant contends the court erred in modifying the definition of "armed" in CALJIC No. 17.15. CALJIC No. 17.15 states that "[t]he term 'armed with a firearm' means knowingly to carry a firearm as a means of offense or defense." The instruction given to the jury defined "armed" as follows: "As used in this instruction, the term armed with a firearm means knowingly to carry a firearm or have it available as a means of offense or defense."

Defense counsel's objection to this definition of armed was overruled. The court's ruling was proper.

In *People v. Reaves* (1974) 42 Cal.App.3d 852 [117 Cal.Rptr. 163], the court discussed the legislative intent behind the arming enhancements:

"The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime. Thus there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon. A person is armed with a deadly weapon

when he simply carries such weapon *or has it available for use* in either offense or defense." (*Id.* at pp. 856-857, italics added.)

That conclusion in *People* v. *Reaves* is dictum but it was approved in *People* v. *Garcia* (1986) 183 Cal.App.3d 335 [228 Cal.Rptr. 87]. There, a resident discovered the defendant in the process of burglarizing his home. Defendant ran from the home but left behind a handgun on a wall by the garage. (*Id.* at pp. 339-340.) The trial court aggravated defendant's sentence based in part on "the fact that at the time of the offense the defendant was armed with a weapon" pursuant to California Rules of Court, rule 421(a)(2). The court upheld the sentence concluding the burglar did not have to have the weapon on his person in order to be "armed . . . at the time of the commission of the crime."

"The fact that a burglar may temporarily divest himself of a weapon, leaving it ready to hand, does not make him any less 'armed.' 'A person is "armed" with a deadly weapon when he simply carries a weapon or *has it available* for use in either offense or defense.' [Citations.]" (*People* v. *Garcia*, *supra*, 183 Cal.App.3d at p. 350.)

Further, in *People* v. *Searle* (1989) 213 Cal.App.3d 1091 [261 Cal.Rptr. 898], defendant was arrested while selling narcotics from his vehicle. When defendant was arrested, the police seized a firearm stored in an unlocked compartment in the back of his car. (*Id.* at p. 1095.) As in *Garcia*, the trial court aggravated defendant's sentence pursuant to California Rules of Court, rule 421(a)(2). On appeal defendant argued he was not armed; the gun was merely stored in his car. The court disagreed. Not only was the gun located in the car from which appellant sold drugs but it was also loaded. Accordingly, the gun was available for use and the trial court properly relied on rule 421(a)(2) to aggravate defendant's sentence. (*Searle*, *supra*, 213 Cal.App.3d at p. 1099.)

While none of the cases interpret the term "armed" within the meaning of section 12022, subdivision (a), *Garcia* and *Searle* construe essentially identical language in a sentencing rule of court. Further, the underlying intent of the Legislature to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime (*People* v. *Reaves*, *supra*, 42 Cal.App.3d at p. 856) is served by using a definition of "armed" which includes having the weapon available for use. Thus, under the facts of this case, the court properly gave the modified version of CALJIC No. 17.15.

### DISPOSITION

The judgment is reversed. The convictions on counts one, two and three are affirmed and the cause is remanded for resentencing only on those counts in accord with the views expressed in this opinion.

Ardaiz, J., and Harris, J., concurred.