[No. D015228. Fourth Dist., Div. One. Nov. 13, 1991.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
KENNETH MARTIN POMILIA, Real Party in Interest.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, Richard J. Neeley, Assistant District Attorney, Thomas F. McArdle, Edward J. Mantyla and David L. Berry, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Francis J. Bardsley, Public Defender, Phillip W. Harry, Assistant Public Defender, Richard P. Siref and Albert Tamayo, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**NARES, J.**—Penal Code section 12022, subdivision (c)[1] provides that persons committing specified narcotics offenses who are "personally armed" shall have a three-, four-, or five-year enhancement to the term of imprisonment otherwise ordered. Kenneth Martin Pomilia was charged with an enumerated offense and this enhancement was alleged. On Pomilia's motion the enhancement was struck in proceedings below, and the People sought mandate to have the enhancing allegation restored before trial. We issue the writ.

### QUESTION PRESENTED

We must here determine whether the Legislature intended the phrase "personally armed" to mean having arms upon the person,

---

[1]All statutory references are to the Penal Code unless otherwise specified.

as contended by Pomilia, or whether "personally" is used to distinguish personal from vicarious liability for being armed, as petitioner contends and as is set forth in related sections.[2] In other words, does "personally" qualify the act, or the actor? If we find the Legislature intended the latter, we must also determine whether Pomilia's conduct, as set forth in this record, falls within the statute's reach.

### FACTUAL BACKGROUND[3]

On the evening of June 19, 1991, police officers went to Pomilia's residence, acting upon information that a hostage might be held therein. An exterior metal security door at the house was closed but not locked, and a wooden inner door was open. After twice knocking and announcing their presence, the officers entered the house. No one was in the living room, but the officers observed two women in the hallway.

The officers saw Pomilia come into the hallway from the master bedroom, and then turn to reenter the master bedroom. At this time, however, he was told to lie on the floor while the officers looked for the hostage.

Although no hostage was found, officers did observe narcotics in plain view. A search warrant was thereafter obtained and executed. Apart from two ounces of cocaine and over a pound of marijuana, the search revealed a total of fifteen guns dispersed throughout the residence. In the master bedroom from which Pomilia had emerged (and to which he attempted to return) were two loaded pistols. Other weapons in the residence included a fully automatic Uzi submachine gun and a sawed-off shotgun. At the time he was restrained by police officers, however, Pomilia did not have a weapon on his person.

### PROCEDURAL BACKGROUND

The complaint filed in this matter alleged inter alia that Pomilia had violated Health and Safety Code section 11351 (possession of cocaine for sale), that the cocaine possessed for sale exceeded 28.5 grams in weight (probation not to be granted except in unusual cases), and that Pomilia was

---

[2]Pomilia also makes a procedural objection, asserting that the People have an adequate remedy by appeal with respect to the order striking the enhancement, and thus mandate should not be available. Where a criminal offense and an enhancement are charged together, as a matter of judicial economy the offense and the enhancing allegation should be tried by the same jury. For this reason, and because prompt and definitive construction of the statute is needed, this is a proper case for resolution. (*People* v. *Superior Court* (*Engert*) (1982) 31 Cal.3d 797, 800 [183 Cal.Rptr. 800, 647 P.2d 76].)

[3]The following facts are taken from the transcript of the preliminary hearing in this matter, held on July 8, 1991.

personally armed in the commission of the offense within the meaning of section 12022, subdivision (c). The court below struck the enhancing allegation pursuant to Pomilia's section 995 motion, adopting the view that "personally" here qualified the act of being "armed", which otherwise meant "available for use." These proceedings followed.

DISCUSSION

## I. LEGISLATIVE INTERPRETATION

### 1. General Principles

 "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citation.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].)

### 2. Construction of Related Statutes

 Petitioner asserts legislative use of "personally armed" in section 12022, subdivision (c) was intended to distinguish personal from vicarious liability; that is, "personally" refers to the person who acts, and not to his action. Real party in interest, however, insists "personally" is to be interpreted as requiring firearms be carried upon the person; that is, it refers to the action rather than the actor. Clearly, "personally armed" is a phrase whose "usual, ordinary import" is subject to debate. In these circumstances, the phrase "personally armed" must be construed in context, and its use harmonized with related statutes to the extent possible. Following the principles set out above, it becomes clear that petitioner's view is correct.

Section 12022 contains four subdivisions of relevance. Subdivision (a) provides that "any person who is armed with a firearm" in the commission of a felony shall receive a one-year enhancement, and that this enhancement applies to any principal in the commission of the offense "whether or not such person is personally armed with a firearm." In this subdivision the word "personally" obviously distinguishes personal from vicarious liability, although punishment is specified in either case.

Subdivision (b) provides an enhancement for "[a]ny person who personally uses" a dangerous or deadly weapon. Subdivision (c), here at issue, provides an enhancement of three, four or five years for "any person who is personally armed with a firearm" during the commission of specified narcotics offenses, while subdivision (d) provides an enhancement of one, two or three years for "any person not personally armed with a firearm" who knows that another principal is "personally armed" during the commission of those same offenses.

It is necessary to construe together the four subdivisions of the same section. So doing, the only rational view of the matter is that, whatever "armed" may mean, when the Legislature mandated a section 12022, subdivision (c) enhancement for those "personally armed," it intended to exclude vicarious liability, rather than specify the character of the act. This conclusion is further supported by enactment of subdivision (d), providing a lesser enhancement for those vicariously rather than "personally" armed, and thus excluded from the operation of subdivision (c). In sum, subdivision (a) provides for personal and vicarious liability, subdivisions (b) and (c) for personal liability only, and subdivision (d) vicarious only.

The interpretation of "personally armed" argued for by Pomilia, however, requires reading subdivision (a) as defining two different classes of being "armed", renders the use of "personally" in subdivision (b) meaningless, and divests all offenders of liability under subdivisions (c) and (d) if, at the time of arrest, whatever weapons they had were not upon their person. ▮ So construing legislative use of the word "personally" conflicts with the principle that "statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) The reading proposed by Pomilia confuses rather than harmonizes.

### 3. Comparison With Section 1203.06, Subdivision (b)(4)

▮ Pomilia's argument is not assisted by his citation to section 1203.06, subdivision (b)(4). That section, precluding grant of probation in

certain circumstances, simply states: " 'armed with a firearm' means to knowingly carry a firearm as a means of offense or defense." While this defines "armed," it does not provide assistance in interpreting "personally." The word "personally" appears in section 1203.06, subdivision (a)(2), but in a context again simply distinguishing personal from vicarious liability. Thus it appears section 1203.06, subdivision (b)(4) is of more use in determining whether Pomilia's conduct constituted being "armed" than in construing the meaning of "personally."

### 4. Previous Construction of "Personally Armed"

The legislative intent in use of the word "personally" in enhancement statutes was extensively reviewed by our Supreme Court in *People v. Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182]. There it was pointed out that "[t]he courts and the Legislature have been confronted with two recurring problems regarding the scope of the enhancement statutes: the first is the definition of the types of crimes to which the statute applies; the other, presented by this case, is the definition of the category of persons liable for the increased penalty." (*Id.* at p. 574.)

In analyzing legislative addition of the word "personally" to statutes closely related to the present one (specifically, §§ 12022, subd. (a), 12022, subd. (b), 12022.5, and 12022.7) the court found "[i]n these amendments, we discern a legislative intent to uniformly limit the class of persons to whom the . . . enhancements are applicable to *those who themselves commit the prohibited conduct*." (31 Cal.3d at p. 576, italics added.) "In sum, we conclude that in enacting section 12022.7, the Legislature intended the designation 'personally' to limit the *category of persons subject to the enhancement . . . .*" (*Id.* at p. 579, italics added.) We have already determined the four-enhancement subdivisions of section 12022 are best harmonized by adopting petitioner's construction of the phrase "personally armed," and that Pomilia's analogy to section 1203.06, subdivision (b)(4) is unavailing. The analysis above, of earlier but related enactments, further supports petitioner's argument.

Pomilia also relies upon *People v. Wandick* (1991) 227 Cal.App.3d 918 [278 Cal.Rptr. 274], for the proposition that "the statute requires that the firearm be on the offender's person." The *Wandick* case involves similar facts to the present one, as the defendant there was arrested for narcotics offenses with firearms in his vicinity but not on his person (*id.* at p. 921), and he was charged with the section 12022, subdivision (c) enhancement, at that time contained in 12022, subdivision (b). The four-year enhancement imposed in *Wandick* was indeed reversed, but because the jury made no

finding of personal arming, rather than vicarious. No language in *Wandick* construes the statute as Pomilia suggests.

### 5. *Historical Background*

We need only refer briefly to the historical background of the legislation. In the view of the Los Angeles District Attorney, the volatile combination of narcotics and firearms was seen as presenting a substantial hazard to the public, and thus armed narcotics dealers should be punished more severely than those unarmed. The Attorney General concurred, pointing out that increased "possession and use of firearms by drug traffickers is a threat to the safety of our citizens and law enforcement officers." There is nothing in the legislative history evidencing any intent on the part of the Legislature that enhanced punishment was proper only for those narcotics offenders who had firearms upon their persons, while those who had ready access to firearms were not to be so punished. Instead, the Legislature clearly intended to provide substantial additional punishment for all "armed" narcotics offenders, in a proper desire to punish more heavily those who presented greater danger, both to law enforcement personnel and to their innocent neighbors.

### 6. *Summary*

The only reading of the word "personally" which harmonizes the four related enhancement provisions of section 12022 is one which employs it to distinguish between personal and vicarious liability for the act of being armed. This interpretation is consistent with previous construction of the word in closely related statutes, and fully comports with both the legislative history and the historical circumstances surrounding enactment of section 12022, subdivision (c). That subdivision prescribes enhanced penalties for those armed narcotics offenders whose liability is personal, while subdivision (d) prescribes lesser penalties for those whose liability is vicarious. Insofar as the court below read "personally" as defining the act, rather than the actor, it was in error, and the writ should issue.

### II. APPLICATION OF STATUTE TO FACTS

Having determined that "personally" defines Pomilia's eligibility for the enhancement, rather than his conduct, we must next examine whether that conduct falls within the range of activities subject to enhancement. That is, could a trier of fact determine that Pomilia's access to the firearms in the bedroom from which he emerged meant that he was "armed" within the meaning of the statute? In resolving this question, we are aided by legislative

reference, during enactment of section 12022, subdivision (c), to case authority interpreting the word "armed."

All parties concede that during the process leading to the enactment of section 12022, subdivision (c) the Legislature referred to the case of *People v. Reaves* (1974) 42 Cal.App.3d 852 [117 Cal.Rptr. 163]. The Legislature was aware of the *Reaves* holding that "[a] person is armed with a deadly weapon when he simply carries such weapon or has it available for use in either offense or defense." (*Id.* at pp. 856-857; see also *People v. Garcia* (1986) 183 Cal.App.3d 335, 350 [228 Cal.Rptr. 87]; *People v. Stiltner* (1982) 132 Cal.App.3d 216, 230 [182 Cal.Rptr. 790], and *People v. Wandick, supra,* 227 Cal.App.3d at pp. 927-928.)

Adopting the definition of "armed" found in *People v. Reaves, supra,* 42 Cal.App.3d 852, which was relied upon by the Legislature in the enactment of the enhancing statute here at issue, it is clear that a trier of fact could properly find that Pomilia did have firearms "available for use in offense or defense" at the time of his arrest, although none of the firearms was on his person, and thus find Pomilia personally (rather than vicariously) was "armed" within the meaning of section 12022, subdivision (c).

## DISPOSITION

The petition and opposing papers on file adequately address the issues raised by the petition, and a peremptory writ is proper in these circumstances. (Code Civ. Proc., § 1088.) The stay order issued on September 16 is ordered vacated upon issuance of the remittitur. Let a peremptory writ of mandate issue commanding respondent court to (1) set aside its order striking the section 12022, subdivision (c) allegation, and (2) enter a new and different order denying Pomilia's motion under section 995 to strike the allegation in question.

Kremer, P. J., and Huffman, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied January 30, 1992. Mosk, J., and Baxter, J., were of the opinion that the petition should be granted.