Filed 7/15/13  P. v. Johnson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANCIS DONALD JOHNSON,<br><br>    Defendant and Appellant. | F064693<br><br>(Super. Ct. No. 1015259)<br><br>**OPINION** |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Gomes, Acting P.J., Poochigian, J. and Detjen, J.

In December 2002, a jury convicted defendant Francis Donald Johnson of voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] and found true an allegation that he personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)).[2] He was sentenced to a 21-year term comprised of the aggravated terms of 11 years for the manslaughter and 10 years for the enhancement. In his prior appeal, we affirmed his sentence but modified the judgment to provide additional presentence conduct credits to which he was entitled.[3]

In May 2010, Johnson filed a petition for writ of habeas corpus in the California Supreme Court, which issued an order in February 2011 directing the Department of Corrections and Rehabilitation (Department) to show cause before the trial court why the upper term sentences did not violate Johnson's right to a jury trial. After the Department filed a return asking the trial court to again impose the upper term on the enhancement, the trial court appointed counsel for Johnson, who filed a response urging the trial court to sentence Johnson to the mitigated term on both the substantive offense and enhancement. At the hearing on that issue, the trial court resentenced Johnson to 15 years, comprised of the upper term of 11 years on the voluntary manslaughter conviction and the midterm of four years on the enhancement.

Johnson appeals, contending the upper term sentence for voluntary manslaughter violated ex post facto principles and the trial court abused its discretion in selecting the upper term for the voluntary manslaughter conviction. Johnson also contends, and

---

[1] All statutory references are to the Penal Code.

[2] An amended information charged Johnson with murder (Pen. Code, § 187). The jury was instructed to consider both first and second degree murder in addition to the lesser included offenses of voluntary manslaughter and involuntary manslaughter.

[3] At the request of the parties, we take judicial notice of the record in case No. F042891, *People v. Johnson*. The California Supreme Court denied Johnson's petition for review on June 9, 2004, in case number S124590.

respondent concedes, that the court security fee and criminal conviction assessment the trial court imposed on resentencing must be stricken.  As we shall explain, we reject Johnson's ex post facto claim and find no abuse of discretion.  We agree the fee and assessment must be stricken, and will order the judgment modified accordingly.

## FACTS

On October 27, 2000, Johnson, the manager of a mobile home park, got into a verbal argument with Doug Casper, one of the park's residents, in the park's laundry room.  Casper followed Johnson to Johnson's trailer and challenged him to a fistfight.  Johnson went into his trailer, telling Casper he was going to call the police.  Casper waited outside, between a fence and Johnson's pickup truck.  While in his trailer, Johnson called the police and told them Casper had threatened to assault him.[4]

When Johnson came out of the trailer a few minutes later, he walked over to Casper and continued to argue.  Johnson pulled a gun out of his waistband, brought the gun to Casper's face and immediately pulled the trigger.  Casper, who was shot in the mouth, died from the gunshot wound.  Johnson called 911 with a cordless phone he was carrying with him and told the operator he shot Casper to defend himself.  Casper's wife, Joyce, screamed for help.  According to Joyce, Johnson, who was standing nearby, told her to "Shut the fuck up, help's on the way."

## DISCUSSION

### *Changes in the Law for Imposing an Upper Term Sentence*

In the period following Johnson's original sentence, many changes occurred in the sentencing law.  In 2007, the United States Supreme Court in *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) considered the constitutionality of California's determinate sentencing law after *Apprendi v. New Jersey* (2000) 530 U.S. 466

---

[4] During a police interview, Johnson admitted he retrieved the gun when he went into his trailer to call the police.

(*Apprendi*).[5]  The Court evaluated Penal Code former section 1170, subdivision (b), which provided that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."  The Court in *Cunningham* found this section violated *Apprendi* because it created a presumption that made the middle term the statutory maximum, thus impermissibly allowing trial courts to impose an aggravated upper prison term "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham, supra,* 549 U.S. at p. 275.)

The California Legislature responded to *Cunningham* by amending the determinate sentencing law effective March 30, 2007.  (Stats. 2007, ch. 3, § 2.)  The amendments eliminated the middle term as the statutory maximum and gave the trial court discretion to select among the lower, middle, and upper terms without stating ultimate facts deemed to be aggravating or mitigating and without weighing those circumstances.  "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions." (*People v. Sandoval* (2007) 41 Cal.4th 825, 848 (*Sandoval*).)  In *Sandoval,* the court held that application of the amended version of the determinate sentencing law to all sentencing proceedings conducted after the effective date of the amendments does not violate the prohibition against ex post facto laws, regardless of whether the offense was committed prior to the effective date of the amendments.  (*Id.* at pp. 853-857.)

Although Johnson's crime occurred in 2000, his current sentencing took place post-*Cunningham* and under the new version of section 1170, subdivision (b), which provides in part:  "When a judgment of imprisonment is to be imposed and the statute

---

[5] In *Apprendi, supra,* 530 U.S. 466, the United States Supreme Court held that a criminal defendant's right to a jury trial is violated when the trial court is allowed to increase a criminal penalty beyond the prescribed statutory maximum based on a fact, other than a prior conviction, which was not admitted by the defendant or found true by a jury.

specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."

### Ex Post Facto Claim

Johnson objected to being sentenced under the new sentencing scheme both in his sentencing brief and at the sentencing hearing. He asserted that *Sandoval* was wrongly decided and he was entitled to a jury trial on any facts supporting an aggravated sentence. The trial court, however, concluded it was bound by *Sandoval* and sentenced Johnson under the current version of section 1170, subdivision (b).

On appeal, Johnson contends the retroactive application of the amendment to section 1170, subdivision (b) to his case is a violation of due process and is a violation of the prohibition of ex post facto laws. Johnson recognizes that the case of *Sandoval, supra,* 41 Cal.4th 825 resolves these issues against him, but he raises them to preserve them for federal review. We are bound by the decisions of the California Supreme Court and therefore reject Johnson's argument. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450.)

### Imposition of the Upper Term

Johnson contends the trial court abused its discretion by imposing the upper term on the voluntary manslaughter conviction. We find no abuse.

A trial court's sentencing decision is reviewed for abuse of discretion. (*Sandoval, supra*, 41 Cal.4th at p. 847.) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*Sandoval, supra,* at p. 847.) Thus, a trial court will abuse its discretion if it relies upon circumstances that are not relevant to the sentencing decision or that otherwise constitute an improper basis for decision. (*Ibid.*)

A trial court is "required to specify reasons for its sentencing decision, but [is not] required to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*Sandoval, supra,* 41 Cal.4th at pp. 846-847.) Under California's determinate sentencing law, "a trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions." (*Id.* at p. 848; see, e.g., Cal. Rules of Court, rule 4.420(c) [fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement]; *id.,* rule 4.420(d) [fact that is an element of the crime may not be used to impose the upper term].) "[T]he existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term." (*People v. Black* (2007) 41 Cal.4th 799, 813 (*Black*).) "The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'" (*Sandoval, supra,* at p. 848.) "An aggravating circumstance is a fact that makes the offense 'distinctively worse than the ordinary.'" (*Black*, *supra*, 41 Cal.4th at p. 817.)

Here, the probation officer's report from the original sentencing listed two circumstances in aggravation: (1) the crime involved acts disclosing a high degree of cruelty, viciousness or callousness (Cal. Rules of Court, rule 4.421(a)(1));[6] and (2) the manner in which the crime was carried out indicates planning, sophistication, or professionalism (rule 4.421(a)(8)). The report also listed two circumstances in mitigation: (1) the victim was an aggressor or provoker of the incident (rule 4.423(a)(2)); and (2) Johnson had an insignificant criminal record (rule 4.423(b)(1)).

At the hearing on the writ, the trial court announced its tentative decision to impose the aggravated sentence of 11 years for the manslaughter based on the nature and seriousness of the crime, and the way the crime was committed, and the middle term on

---

[6] All further references to rules are to the California Rules of Court.

the enhancement as sentencing Johnson to an upper term would require dual use of the facts. After hearing oral argument, the trial court sentenced Johnson according to its tentative decision, and imposed the 11-year upper term for the voluntary manslaughter conviction and a consecutive four-year mid-term for the enhancement.

In explaining its decision with respect to the manslaughter conviction, the trial court noted the existence of mitigating factors, namely Johnson's lack of criminal behavior and that the victim "acted somewhat aggressively in this." Nevertheless, it found an aggravated sentence was justified by the following: " … Johnson did retreat to a place of safety. He called 911 and then, whether he picked up the gun at that point or had a gun previously and went back out, he approached the victim. He was close enough to the victim to shoot him in the face, shot him in the face, and then – and it may not be strictly within the aggravating factors, but he went back in the house, called 911, and then came out and told the wife to either "Shut up" or "Shut the fuck up." And I think under these circumstances and as [the prosecutor] indicated he had previously, prior to this incident anyway, had indicated he was ready to use the firearm that he had and I think, just on balance, these factors are worthy of the aggravated sentence."

Johnson first contends the trial court abused its discretion when it relied on the way the firearm was used, i.e. shooting Casper in the face at close range, to impose the upper term on manslaughter. He asserts by relying on this fact, the trial court made an impermissible dual use of a fact that was the predicate for the enhancement, namely the use of a firearm.

From the trial court's comments, it appears the aggravating circumstance it found related to the manner in which the killing was accomplished, that is, that the crime involved acts disclosing a high degree of cruelty, viciousness or callousness. (Rule 4.421(a)(1).) Johnson's argument is based on the premise that this aggravating circumstance was attributable to the same underlying fact as the personal use enhancement, namely his use of a gun, and as such constituted a dual use of the facts.

7.

While Johnson is partially right, as his use of a gun was integral to both the aggravating circumstance and the enhancement, he also is partially wrong, since the aggravating circumstance rested on additional, different facts than gun use alone.

The cruelty, viciousness or callousness of an offense is properly found where there is evidence to support such a finding "beyond mere gun-use or vulnerability of the victim." (*People v. Levitt* (1984) 156 Cal.App.3d 500, 515-516 (*Levitt*), relying on *People v. White* (1981) 117 Cal.App.3d 270, 282, disapproved on another ground in *People v. Scott* (1994) 9 Cal.4th 331, 352-353 and fn. 16.) In *Levitt*, the appellate court found the fact that the victim was shot in the back of the head displayed callousness beyond that inherent in mere gun use. In so finding, the court distinguished the case from that of *People v. Smith* (1980) 101 Cal.App.3d 964, where that Court of Appeal held the trial court improperly imposed an upper term for robbery and an additional term for a firearm enhancement based gun use. (*Levitt*, *supra*, 156 Cal.App.3d at pp. 515-516.)

As in *Levitt*, here there was more than gun use to support the trial court's finding of callousness. Approaching and shooting a man in the face at close range was a cruel, vicious and callous act that went beyond mere gun use. Johnson asserts the fact that the shot was fired at close range "did not make the resulting death distinctively worse than the ordinary manslaughter." When the trial court determined that Johnson's actions were cruel, vicious and callous, however, it was considering not just that Johnson shot Casper at close range, but the entire sequence of events, which included approaching Casper from a place of safety with a firearm, getting close to Casper, shooting him in the face, and then, after calling 911, telling Casper's wife to shut up. The trial court reasonably could conclude, as it did, that Johnson's actions throughout the incident evidenced cruelty and callousness.

Next, Johnson argues the trial court improperly relied on statements he made before the incident that indicated he was ready to use the firearm. Johnson made more than one such statement. Sometime before the shooting, he told Jim Smith that he had a

8.

gun and was not afraid to use it, and if he used it, he would get away with it. About two weeks before the shooting, Johnson told Joyce, "Look you stupid fucking bitch, I'll blow both your fucking heads off and get away with it too[,]" pulled open his coat and revealed his gun.[7] Johnson asserts these statements were insufficient to support the trial court's finding of planning as a factor in aggravation, were not reasonably related to the offense, and did not render his culpability worse than ordinary manslaughter.

The mere fact the statements were made before the offense does not mean they are not related to it. As respondent points out, pre-offense statements are commonly admitted at trial if relevant to planning, motive, malice or other factors. (See, e.g., *People v. Clark* (2011) 52 Cal.4th 856, 956-957.) In exercising its "broad discretion," the trial court here reasonably could find Johnson's statements relevant to his offense. (*People v. Towne* (2008) 44 Cal.4th 63, 85 (*Towne*) ["California law affords the trial court broad discretion to consider relevant evidence at sentencing."]) It also could find that it rendered Johnson's culpability worse than others who commit manslaughter, as the availability of firearms creates the potential for injury and death. (See *People v. Mendival* (1992) 2 Cal.App.4th 562, 573; *People v. Wandick* (1991) 227 Cal.App.3d 918, 927.) It could also consider the statements as evidence of planning, despite Johnson's acquittal of murder. (*Towne*, *supra*, 44 Cal.4th at p. 85-86, 87-88; see also *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340; *Levitt*, *supra*, 156 Cal.App.3d at p. 516.)

_____

[7] While Johnson asserts the trial court did not rely on the second statement to impose the upper term, since the trial court did not specifically reference the statement in its decision, we do not read the record so narrowly. The record shows that at the sentencing hearing, the prosecutor mentioned both statements when arguing Johnson clearly intended to use the firearm "because he made statements to more than one person that he intended to use it." In pronouncing judgment, the trial court referenced the prosecutor's argument as follows: " . . . as [the prosecutor] indicated [Johnson] had previously, prior to this incident anyway, had indicated he was ready to use the firearm that he had . . . " In our view, the trial court was referring to both statements, each of which indicated a readiness to use the firearm.

Johnson also asserts the trial court could not rely on his statement to Joyce that she should shut up, made after he shot Casper and called 911, because it was made to someone other than the victim of the crime after the crime was completed. A defendant's actions or conduct at the scene of the crime, but occurring shortly before or after the crime, however, may be considered when weighing the "callousness" factor. (See, e.g. , *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1735-1736, and *Levitt*, *supra*, 156 Cal.App.3d at p. 516 [noting that trial court was justified in observing that the "entire criminal enterprise was characterized by callousness"].) Here, Johnson's statement to Joyce demonstrates a cruel and callous attitude toward the crime that began before he shot Casper and continued throughout the incident.

Finally, Johnson asserts for the first time that the trial court could not rely on his statements made before or after the shooting to aggravate his sentence because to do so violates his right to freedom of speech under the federal and state Constitutions. He argues his statements were protected speech under the First Amendment and thus could not be used to impose the upper term. Respondent contends, and we agree, that Johnson has forfeited this argument because he failed to object on this ground. (See *People v. Quartermain* (1997) 16 Cal.4th 600, 629-630; see also *People v. Partida* (2005) 37 Cal.4th 428, 433-434; *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1060-1061.)

Even if not forfeited, the claim fails. Johnson has cited no authority that the First Amendment prohibits imposition of an upper term based on words that are spoken in relation to the crime. To the contrary, admission of evidence "relevant to actual criminal conduct . . . does not violate [a defendant's] constitutional free speech rights." (*People v. Smith* (2003) 30 Cal.4th 581, 626.) Johnson's statements were admitted as evidence relevant to the charged crime and the lesser-included offenses, and suggested a motive to kill Casper. Because the statements constituted relevant evidence, there was no First Amendment violation. Moreover, there was no attempt to restrict Johnson's speech or punish him merely for his words, as in the case he relies on, *City of Houston v. Hill*

10.

(1987) 482 U.S. 451, 466-467, in which the United States Supreme Court held that a municipal ordinance making it unlawful to interrupt a police officer in the performance of his or her duties was unconstitutionally overbroad under the First Amendment. Instead, the upper term was imposed because Johnson exhibited, by his words and actions, that the shooting was cruel and callous.

In sum, a trial court's choice of an upper term may be based on any aggravating factor(s) "reasonably related to the decision being made" (Rule 4.408(a)), and will not be disturbed on appeal if it is "consistent with the letter and spirit of the law"; "based upon an 'individualized consideration of the offense, the offender, and the public interest'"; and is neither "arbitrary" nor "capricious" (*Sandoval, supra,* 41 Cal.4th at p. 847). The trial court's determination that the voluntary manslaughter justified the imposition of the upper term satisfies these criteria.

### *Court Facilities Assessment and Fee*

When the trial court resentenced Johnson, it ordered him to pay a $40 court security fee pursuant to Penal Code section 1465.8 and a $30 conviction assessment fee pursuant to Government Code section 70373. Johnson contends, and respondent concedes, that neither of these fees should have been imposed because he was convicted before the effective date of either statute. As the parties note, Johnson was convicted on December 20, 2002, and each statute became operative after Johnson's conviction. (*People v. Alford* (2007) 42 Cal.4th 749, 753-754 [Legislature intended court security fee of section 1465.8 to be imposed to all convictions after its operative date of August 17, 2003]; *People v. Davis* (2010) 185 Cal.App.4th 998, 1000 [Gov. Code, § 70373 applies only where the conviction occurs on or after its effective date of January 1, 2009; order imposing assessment reversed].) We agree and will strike the fee and assessment.

### DISPOSITION

We grant the parties' requests that we take judicial notice of the record in case number F042891, *People v. Johnson.* The judgment is modified to strike the $40 court

11.

security fee imposed pursuant to Penal Code section 1465.8 and the $30 criminal conviction assessment imposed pursuant to Government Code section 70373. As modified, the judgment is affirmed. The clerk of the superior court is ordered to prepare an amended abstract of judgment reflecting this modification and transmit it to the appropriate authorities.