[Crim. No. 8424.   Second Dist., Div. Two.   May 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HUGH McLEOD PHEASTER, Defendant and Appellant.

Ray L. Smith for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment of conviction wherein he was found guilty of the crime of abortion in violation of section 274 Penal Code, and also of the crime of attempted abortion. In addition, he was found to have come within the terms of section 12022 of the Penal Code in that he was armed with a .38 caliber revolver at the time of the commission of the attempted abortion.[1]

---

[1]Section 12022 provides in part: "Any person who commits or attempts to commit any felony within this State while armed with any of the weapons mentioned in Section 12020 or while armed with any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as provided by this chapter, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punish-

Appellant's sole contention on this appeal relates to the propriety of applying section 12022 Penal Code in this instance. He does not question the sufficiency of the evidence to prove the abortion or the attempted abortion; nor does he deny that he was in possession of the weapon at the time of the attempted abortion. His sole contention herein is that section 12022 must be considered together with section 12023[2] and that, when so considered, it will appear that the Legislature, in using the words "any felony" in section 12022, actually meant only those felonies committed "against the person of another" referred to in section 12023.

Appellant argues that an abortion is not a crime "against the person of another" as that expression is used in section 12023, since, in most instances, the woman involved is a willing participant and therefore a weapon is not needed in order to overcome resistance. Whatever may be the theoretical validity of this element of appellant's argument, it is apparent that his basic contention is wholly without merit.

Although both sections relate to the general subject of serious crimes committed while carrying dangerous weapons, their provisions are markedly different, and this is so for the quite obvious reason that their functions and purposes are entirely different. Section 12023 does not purport to govern the matter of the sentence; it merely sets forth a rule of evidence. Before the possession of a weapon should be accorded any substantial effect as evidence tending to prove the commission of a separate offense, there should be some proof that such weapon was used in the commission of the primary offense. (See *People* v. *Murguia,* 6 Cal.2d 190, 193-194 [57 P.2d 115], where this proposition was applied in connection with section 12023, which was then a part of section 3 of the Deadly Weapons Act.) The failure of the Legislature to amend section 12022 in 1961 when section 12023 was amended to bring it into conformity with the rule expressed in the *Murguia* case, *supra,* supplies additional proof that the Legislature recognized the inherent difference in the two sections and did not intend the requirements of the latter to be included in the former.

able by imprisonment in a state prison for not less than five nor more than 10 years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

[2]Section 12023 provides: "In the trial of a person charged with committing or attempting to commit a felony against the person of

■ Section 12022, on the other hand, is no more than a logical extension of the basic and historic legal concept that the punishment of malefactors should be correlated with the danger to the public deemed to be inherent in their various wrongful acts. Thus, section 12025 of the Penal Code provides that any person who carries a concealed firearm without a license so to do "is guilty of a misdemeanor, and if he has been convicted previously of any felony or of any crime made punishable by this chapter, is guilty of a felony."

Section 12021 makes it a crime even to own or possess a firearm capable of being concealed by aliens, felons or drug addicts. Section 12022, presently being considered, does no more than provide a further and additional penalty where a person is armed with the illegal firearm during the commission of any felony.

■ To argue that when the Legislature used the clear and concise expression "*any* felony" in section 12022, they actually meant only felonies in which a weapon was reasonably necessary to its commission is to ignore the universally known fact that felonies of this latter variety generally are punished more severely in any event by reason of their great intrinsic danger to society.

*In re Shull*, 23 Cal.2d 745 [146 P.2d 417], held that the punishment prescribed for the crime of assault with a deadly weapon could not properly be increased under the terms of section 12022, then a part of section 3 of the Deadly Weapons Act, where the weapon involved was the one used in, and required as one of the elements of, the felony to which it relates.[3]

■ Therefore, as pointed out in the *Shull* case, *supra,* the intent of the Legislature in enacting section 12022 appears to be the exact converse of that urged by appellants in

---

another while armed with any of the weapons mentioned in Section 12020, or while armed with any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as provided by this chapter, the fact that he was so armed shall be prima facie evidence of his intent to commit the felony if *such weapon was used in the commission of the offense.*" (The italicized words were added by 1961 amendment.)

[3]See 4 Opinions California Attorney General 279, discussing the inapplicability of section 12022 to a prisoner convicted of first degree robbery, where the robbery was of the first degree solely because he was armed with the prohibited weapon; see also *In re Rodgers,* 121 Cal.App. 370 [9 P.2d 223], declaring section 12022 inapplicable to the case of an exconvict convicted under section 12021 of possessing the prohibited weapon.

that it probably had in mind only those felonies in which possession of a deadly weapon would not be a necessary element. Thus, it is stated at page 750: "It is apparent that section 245 of the Penal Code is a specific provision. It defines and determines the punishment for a specific kind of a crime, assault with a deadly weapon, in the instant case, a pistol. On the other hand, section 3 of the Deadly Weapons Act [now section 12022] which imposes the additional penalty *refers to no particular crime,* but purports to require an added punishment *for felonies generally* where the one committing the same is armed with a pistol or the other weapons designated therein and in section 1. . . . It is not unreasonable to suppose that the Legislature believed that for felonies *in which the use of a gun was not one of the essential factors,* such as rape, larceny, and the like, *an added penalty should be imposed by reason of the fact that the defendant being armed with such a weapon would probably be more dangerous because of the probability of death or physical injury being inflicted by the weapon. Hence, such a condition would be reasonable grounds for increasing the penalty where felonies are involved which do not include as a necessary element being armed with a pistol. . . . In felonies where a deadly weapon is not a factor in the offense, the additional punishment is imposed by section 3 of the Deadly Weapons Act, because of the additional factor of a deadly weapon being involved."* (Italics added.)

■ Also bearing on this point is the following language from *In re Rodgers, supra,* 121 Cal.App. 370, 371-372: "After providing that certain classes of persons should refrain from the carrying of concealed weapons, the legislature having in mind that anyone committing a felony, such for instance, as burglary or robbery, going armed, *would do so with the intent of killing anyone who should interrupt or attempt to interrupt the commission of such offense, or who, after committing a felony, to which a severe penalty is attached, would, if armed, resist arrest even to the extent of taking life, provided additional penalties which should be added to the penalties otherwise specified in the codes as penalties for the offenses for which such person is arrested, prosecuted and convicted.* Thus, if a person armed with a deadly weapon, should commit a burglary, under such circumstances, in addition to the penalty provided for the offense of burglary, there should be added an additional term of imprisonment graduated according to the previous offenses, if

any, of which the person prosecuted for burglary, or other felony, may have been convicted.'' (Italics added.)

■ Appellant also argues that unless section 12022 is interpreted in the peculiar fashion advocated by him, the provision of the section requiring the person be ''armed'' with the weapon when committing the crime becomes meaningless. He concedes that the jury properly was instructed that: ''A person is 'armed with' a weapon when he carries such *weapon as a means of offense or defense.*''[4]

This argument is equally unsound. As pointed out in the *Shull* and *Rodgers* cases, *supra,* section 12022 does not make the possession of the weapon a crime. Sections 12021 and 12025 cover this aspect of the wrong; section 12022 merely increases the punishment to be administered when a person having ''armed'' himself, as that term is defined, commits a separate and distinct felony. The expression ''armed,'' therefore, is quite meaningful and applies to cases in which a person not only is in possession of a weapon illegally, but is carrying it as a means of offense or defense. There was ample evidence here from which the jury could properly infer that appellant carried the gun as an instrument of offense or defense.

■ In fact, the very thing apprehended in the *Rodgers* case, *supra,* namely, that ''anyone . . . who, after committing a felony, to which a severe penalty is attached, would, if armed, resist arrest even to the extent of taking life. . . .'' would appear to have been existent in the instant case. The evidence is such as to support an inference that it was only the cautious procedure followed by the police when they interrupted appellant's attempt to commit the crime of abortion that prevented him from using the weapon against them.

Judgment affirmed. Appeal from order denying motion for new trial is dismissed.

Fox, P. J., concurred.

ASHBURN, J.—Concurring. On the face of the matter it is difficult to conceive of the use or intended use of a dangerous weapon in the commission of an abortion or an escape from detection or arrest for same. It is not a crime of violence against another but is committed with the full consent of each participant and in secret. In other words, the use of a dangerous weapon ordinarily has no part in an abortion and

---

[4]CALJIC No. 116A.

section 12022, Penal Code, *seems* to have no application. But the facts of this case reveal that this is not universally true.

Defendant apparently was in the abortion business. He told Miss Rodda, the prospective abortee, that he did not want to do the job because "the heat was on him, and that he had been followed." When she was insistent he said, "Well, let's go for a ride." This they did and defendant told her "That he had been tipped off someone was going to set him up in a deal and that he had been followed for two weeks." From time to time he looked in the rear mirror and changed direction, checking to see if he had been followed. After they arrived at Miss Rodda's motel room where the abortion was to be performed and after some preliminaries which amounted to little more than preparation for the crime, defendant began filling a hypodermic syringe and Miss Rodda asked, "Do I get that right now?" That was the signal for officers who were in the adjoining room to enter; this they did and ordered defendant to put his hands against the wall. After doing so he engaged in a maneuver which seemed designed to and caused his revolver to fall to the floor. Upon being asked if he usually carried a gun when he went out, he replied that he had carried it the last couple of days, and when asked why he did so, he said that someone had been tailing him for about two weeks and he did not know who it was. Upon being asked whether he had any enemies, he said he might have and added that he had been followed by several Ford cars, including a green 1959 Ford, and by a blue Lincoln with a colored man in it. Defendant himself testified that he had heard a rumor that "he had been set up by the police" and was worried for the two weeks prior to October 4 because he did not know whether he was being followed by the police or by someone hired by Rosoto. During that time he kept the gun in his car, intending to use it "to shoot it out" with anyone who tried to "pull" him "over to the side of the road." This was enough to afford basis for a reasonable inference that defendant was intending to shoot his way out of any abortion entanglement—to ward off intruders or to effect an escape if necessary.

In the light of this testimony certain of the language of *In re Rodgers*, 121 Cal.App. 370, 371 [9 P.2d 223], becomes pertinent: "After providing that certain classes of persons should refrain from the carrying of concealed weapons, the legislature having in mind that anyone committing a felony, such for instance, as burglary or robbery, going armed,

would do so with the intent of killing anyone who should interrupt or attempt to interrupt the commission of such offense, or who, after committing a felony, to which a severe penalty is attached, would, if armed, resist arrest, even to the extent of taking life, provided additional penalties which should be added to the penalties otherwise specified in the codes as penalties for the offenses for which such person is arrested, prosecuted and convicted.''

For these reasons I concur in the ruling of the majority.