[No. F013870. Fifth Dist. Jan. 8, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
TRINIDAD ANGULO MENDIVAL et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of subpart B of part I, part II and part III.

**COUNSEL**

Jolene Larimore, Carlo Andreani and Charles Bush, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, W. Scott Thorpe, Janet Neeley Kvarme and Edgar Kerry, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARDAIZ, Acting P. J.**—On December 26, 1989, codefendants Alfredo Meza, Trinidad Angulo Mendival, and Juan Rodriguez were charged with transporting cocaine in count one (Health & Saf. Code, § 11352); and offering cocaine for sale in count two (Health & Saf. Code, § 11352). Codefendants Meza and Mendival were charged with possessing cocaine for purpose of sale in count three (Health & Saf. Code, § 11351). It was also alleged that defendants transported more than three pounds of a controlled substance (Health & Saf. Code, § 11370.4, subd. (a)(1)); that Meza and Mendival were personally armed with a firearm (Pen. Code, § 12022, subd. (c));[1] and that Rodriguez was armed with a firearm (Pen. Code, § 12022, subd. (a)).

On March 13, 1990, after jury trial, Meza was found guilty on all counts and the enhancements were found to be true. Rodriguez was found guilty on counts one and two (he was not charged in count three), and the enhancements were found to be true. Mendival was found guilty on all counts and the enhancements were found to be true.

---

[1] The information incorrectly lists the code section for being personally armed with a firearm as Penal Code section 12022, subdivision (b); the correct section is subdivision (c). The issue of appropriate pleading is not challenged. All parties treat the allegation as one alleging "personally armed."

On April 12, 1990, Meza was sentenced to the midterm of four years on count one, with three years consecutively on the weight enhancement and four years consecutively on the personal arming enhancement, for a total of eleven years on count one; on count two, four years concurrent with a three-year weight enhancement; and on count three, three years concurrently plus a three-year weight enhancement. The arming enhancement on count three was stayed pursuant to Penal Code section 654, for a total sentence of 11 years.

On April 12, 1990, Mendival received the same sentence as Meza, for a total of 11 years in state prison.

On April 26, 1990, Rodriguez was sentenced to the midterm of four years on count one, with three years consecutively on the weight enhancement and one year consecutively on the arming enhancement. On count two, he received a concurrent sentence of four years, with three years on the weight enhancement. Thus, his total sentence was eight years.

All three defendants now appeal.

FACTS

Ascension Duran was a paid police informant.

On November 1, 1989, Duran went to Express Auto Body in Fresno and met Rodriguez, who worked there. Duran subsequently reported to his police contact, Officer Alex Flores, that Rodriguez said he could obtain cocaine.

On November 3, 1989, Duran, in response to a call he had received the night before from Rodriguez, went back to Express Auto Body. Rodriguez showed Duran a kilo of cocaine, and the two discussed purchase of the kilo by Duran. Duran did not, however, purchase the kilo, because Officer Flores was not prepared to make an arrest.

On November 6, 1990, Duran again went to Express Auto Body and again talked with Rodriguez. Rodriguez told Duran there was a likelihood of 50 kilograms of cocaine arriving in Fresno that evening or the next morning. If that occurred, Rodriguez continued, perhaps two kilos could be brought to Express Auto Body so that Duran could see them.

The next day, Duran went again to Express Auto Body. Rodriguez reported that the expected shipment had not arrived, and promised to get in touch with Duran when it did.

Duran returned to Express Auto Body on the following day, November 8, 1989. Rodriguez told Duran that there had been a miscommunication; the quantity had arrived, but it was no longer in the Fresno area.

The following day, November 9, 1990, Duran went to Express Auto Body and talked with both Rodriguez and Rodriguez's brother, Alfredo Meza. Meza told Duran that a kilo or more of cocaine could be delivered to the Stockton area; in fact, on previous occasions, he (Meza) and Rodriguez had made kilo quantity deliveries to Stockton and even further north than Stockton.

On November 20, 1989, Duran contacted Officer Flores, stated that he had spoken with Rodriguez, and expressed optimism that a sale of three to five kilograms could take place that afternoon or evening. Later the same day, Duran went to Express Auto Body. Rodriguez was there, and told Duran that Meza was out conducting business but would be back soon. When Meza got back, Rodriguez continued, Duran could be shown the cocaine. Duran could either stay at the shop and wait for Meza, or leave and call back later.

Duran left Express Auto Body and returned a short time later. This time Meza was present at Express Auto Body. Meza said to Duran: "Follow me. Let's go over and see it." Meza pulled out in a car, and Duran immediately followed in his own car.

Meza led Duran to a residence on Iowa Street, and the pair went inside the residence. There Meza showed Duran three brick kilos. Meza and Duran discussed the possibility of Duran buying more than three kilos, and Meza said he could come up with two more within a day. Meza quoted Duran a price of $17,000 per kilo. This was the same price Rodriguez had quoted Duran earlier. Meza gave Duran his number, and told Duran to call him whenever he was ready. Duran left and contacted Officer Flores. He then called the number Meza had given him and arranged to meet Meza at Highway 99 and Olive.

Mendival arrived at the Iowa Street residence while Meza was there. The two of them went in Meza's white Toyota to a gas station. They then went to a house on Fourth Street. The Fourth Street house was Meza's uncle's house. Meza called Duran on the telephone from Meza's uncle's house after Duran had called Meza's beeper. During this telephone conversation Meza and Duran agreed to meet at Olive and Highway 99 at 6 p.m. Meza then returned to the Iowa Street residence with Mendival. Meza testified at first that he placed the three kilos of cocaine in the trunk of the car before he and Mendival went to the gas station and to Meza's uncle's house. Later he

testified that he put the three kilos of cocaine in the trunk of the car after he and Mendival had returned from the trip to the gas station and to Meza's uncle's house.

Meza and Mendival then left the Iowa Street residence in the Toyota and met Duran at Olive and Highway 99. After three or four minutes, Duran's car and Meza's car headed north on 99. Shortly before the Meza vehicle was stopped by police, passenger Mendival was observed tossing a small object out the window. It was retrieved by police and was found to be a folded dollar bill containing a small amount of cocaine.

On Highway 99 the police stopped Meza's car. In the car were the driver, Meza, and the passenger, Mendival. Lying on the front floorboard of the car was an unloaded handgun. In the trunk of the car, inside a backpack, the police found 6.8 pounds of cocaine.

## DISCUSSION

### I. Appellant Meza

Appellant Meza, the driver of the car in which the 6.8 pounds of cocaine were found, admitted the substantive offenses and the weight enhancement. He contested only the allegation that he was personally armed with a firearm. On appeal, he contends that (1) the trial court improperly instructed the jury on the allegation that he was personally armed with a firearm, and (2) the imposition of a concurrent sentence on count two (offering to sell cocaine) is prohibited by Penal Code section 654.

### A. The "personally armed" enhancement

Both count one (transportation of cocaine) and count three (possession of cocaine for sale) included the allegation that defendants Meza and Mendival (the passenger) "in the commission of the . . . offense . . . were personally armed with a firearm, within the meaning of Penal Code § 12022(b)."[2] The "personally armed" subdivision of section 12022 states:

"Notwithstanding the enhancement set forth in subdivision (a), any person who is personally armed with a firearm in the commission or attempted commission of a violation of Section 11351 . . . 11352 . . . of the Health and Safety Code, shall, upon conviction of that offense and in addition and consecutive to the punishment prescribed for the offense of which he or she

---

[2]See footnote 1, *ante*. The "personally armed" enhancement is actually found in subdivision (c), not subdivision (b).

has been convicted, be punished by an additional term of imprisonment in the state prison for three, four, or five years in the court's discretion."

The trial judge instructed the jury as follows:

"It is alleged in Counts One and Three that in the commission of the crimes therein described that the defendants ALFREDO CUEVAS MEZA and TRINIDAD ANGULO MENDIVAL were each personally armed with a firearm.

"If you find either defendant ALFREDO CUEVAS MEZA or TRINIDAD ANGULO MENDIVAL guilty of either or both of the crimes thus charged, you must then determine whether or not such defendant was personally armed with a firearm during the commission of such crimes.

"A person is 'armed with a firearm' when he simply carries a firearm or knowingly has it available for use in either offense or defense.

"The word 'firearm' includes handguns.

"The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

"As to defendant TRINIDAD ANGULO MENDIVAL, you will include a special finding on that question on the verdict form that will be supplied for that purpose.

"As to defendant ALFREDO CUEVAS MEZA, if you unanimously agree that he was personally armed with a firearm during the commission of such crimes, you will have your foreperson so indicate on the verdict form. Nothing further will be then required of you as to those crimes.

"If you unanimously agree that ALFREDO CUEVAS MEZA was not personally armed with a firearm during the commission of such crimes, you will so indicate on the verdict form. However, you must then determine if ALFREDO CUEVAS MEZA knew that another principal was personally armed with a firearm during the commission of such crimes. You will include a special finding on that question on the verdict form supplied for that purpose."

The jury found that Meza was personally armed during the commission of the transportation and possession for sale crimes, and also found that he knew that Mendival was personally armed during the commission of these crimes.[3] The jury also found that passenger Mendival was personally armed with a firearm during the commission of these crimes. There was only one gun, the gun found on the floorboard of the car on the passenger side.

---

[3]The jury also found Meza knew that Mendival, a principal, was "personally armed." Such a finding would relate to Penal Code section 12022, subdivision (d), but this was not charged.

Meza makes two basic contentions regarding the jury's finding he was personally armed within the meaning of Penal Code section 12022, subdivision (c). First, he maintains the trial court erred in its instruction as to the meaning of "personally armed." Second, he maintains that two people cannot be "personally armed" with only one firearm.

*The trial court's instruction on personally armed*

■ Meza argues that the trial court's instruction that "a person is 'armed with a firearm' when he simply carries a firearm or knowingly has it available for use in either offense or defense" is erroneous. He contends that one is "armed with a firearm" only when he knowingly carries a firearm. Meza maintains that simply carrying the firearm is not sufficient without a finding that the firearm was knowingly carried, and that knowingly having a firearm available for use in either offense or defense is never sufficient.

Since no evidence was presented that Meza ever touched the gun, Meza's contention that "simply carrying" is insufficient and that a defendant must "knowingly carry" to be personally armed is academic. We are faced with a situation where either (1) Meza knowingly had the gun available for use in either offense or defense, and this is legally sufficient (as the People contend), (2) Meza knowingly had the gun available for use in either offense or defense, but this is not legally sufficient, or (3) Meza did not knowingly have the gun available for use in either offense or defense.

Penal Code section 12022, subdivision (c) has not been extensively discussed in reported decisions as to the meaning of the phrase "personally armed with a firearm."[4] Several cases, however, have construed the phrase "armed with a firearm," in a context that is helpful to our resolution of the issue.

In *People* v. *Pheaster* (1963) 215 Cal.App.2d 754 [30 Cal.Rptr. 363], the defendant was convicted of attempting to perform an illegal abortion "while armed with any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm." (*Id.* at p. 755, fn. 1.) The statute prohibited the commission or attempted commission of "any felony" while so armed. (*Ibid.*) When he was arrested he was ordered to put his hands up against the wall. He did so and his revolver fell from his person to the floor. The opinion notes that "the jury properly was instructed that: 'A person is "armed with" a weapon when he carries

---

[4]We are aware that the Fourth District reached this issue in *People* v. *Superior Court (Pomilla)* (1991) 235 Cal.App.3d 1464 [1 Cal.Rptr.2d 386].

such *weapon as a means of offense or defense.*' " (*Id.* at p. 759, fn. omitted, italics in original.)

In *People* v. *Reaves* (1974) 42 Cal.App.3d 852 [117 Cal.Rptr. 163], the court affirmed the finding that a defendant who had pointed a gun at a store clerk during a robbery had "used a firearm" during commission of the crime. (*Id.* at pp. 856-857.) The opinion notes that "use" of a firearm is something more than being armed with one, and states that a "person is armed with a deadly weapon when he simply carries such weapon or has it available for use in either offense or defense." (*Id.* at pp. 857-858.)

In *People* v. *Stiltner* (1982) 132 Cal.App.3d 216 [182 Cal.Rptr. 790], the court upheld a finding that the defendant had been "armed with a . . . deadly weapon" (Pen. Code, § 12022.3) in the commission of the crime of forced oral copulation when the defendant committed the crime while carrying a knife in his back pocket. The court stated:

"A person is 'armed' with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense. (*People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].) The evidence shows the knife was carried by defendant in his back pocket, thus available for immediate use for offense or defense. The statute at issue does not require a defendant actually use the weapon for offense or defense, just that he carry it in a manner available for such use." (132 Cal.App.3d at p. 230.)

In *People* v. *Martinez* (1984) 150 Cal.App.3d 579 [198 Cal.Rptr. 565], the court affirmed a finding that defendant Martinez had committed a rape while armed with a deadly weapon (Pen. Code § 12022.3). The weapon was a screwdriver that was beside Martinez on the bed while he was raping the victim. The court, quoting *Martinez,* stated: " 'A person is "armed" with a deadly weapon when he simply carries a weapon or has it available for use in either offense or defense.' " (150 Cal.App.3d at p. 604.)

In *People* v. *Miley* (1984) 158 Cal.App.3d 25 [204 Cal.Rptr. 347], after the jury found that the defendant had been "armed with a firearm in the commission . . . of a felony" (Pen. Code, § 12022, subd. (a)) for furnishing a gun to the man he had solicited to commit a murder, the appellate court struck the Penal Code section 12022, subdivision (a) enhancement. The court noted that "[a]ppellant was not armed with the gun as a 'means of offense or defense' at the time of the *solicitation.*" (158 Cal.App.3d at p. 32, italics in original.) The court added that the risk of harm from the furnishing of the gun was increased "to the projected victim of the crime which was being

solicited and not to any person present at the time the crime of solicitation was being committed." (*Ibid.*) The court stated: "A person is 'armed' within the meaning of section 12022, subdivision (a) when he carries a weapon as an instrument of offense or defense at the time of the commission of the felony." (*Ibid.*)

In *People* v. *Hays* (1983) 147 Cal.App.3d 534 [195 Cal.Rptr. 252], the defendant came "crashing through the acoustical ceiling" of an office and had a rifle slung across his chest. (*Id.* at p. 539.) The understandably frightened occupant of the office ran out, and the defendant took money from the office before being captured. The jury found that he had used a firearm in the commission of the robbery, but the appellate court concluded that he did not use the firearm but rather was merely armed with it. The *Hays* court, in reference to *Pheaster*, stated: "The court held 'armed' means possession with the intent to use the weapon as a means of offense or defense." (*Id.* at p. 545.)

In *People* v. *Garcia* (1986) 183 Cal.App.3d 335 [228 Cal.Rptr. 87], the defendant was interrupted during his commission of a burglary and ran out of the house he was burglarizing. He had already entered the garage and the adjacent kitchen, and had stacked the homeowner's power tools in the center of the garage. On the garage floor were twelve .22-caliber Winchester bullets not owned by the homeowner. Just outside the garage was a .22-caliber handgun not owned by the homeowner. The defendant was convicted of burglary and, at sentencing, the court found as a circumstance in aggravation that "the defendant was armed with . . . a weapon at the time of the commission of the crime." (Rule 421(a)(2), Cal. Rules of Court.) The appellate court affirmed, stating:

"In the California Rules of Court, rule 421(a)(2) provides that if '[t]he defendant was armed with or used a weapon at the time of the commission of the crime,' that fact is an aggravating circumstance whether it is charged or not. We know of no case which has construed this rule to mean that a burglar must have a weapon on his person in order to be 'armed . . . at the time of the commission of the crime.' The fact that a burglar may temporarily divest himself of a weapon, leaving it ready to hand, does not make him any less 'armed.' 'A person is "armed" with a deadly weapon when he simply carries a weapon *or has it available* for use in either offense or defense.' (*People* v. *Stiltner* (1982) 132 Cal.App.3d 216, 230 [182 Cal.Rptr. 790], italics added; *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856-857 [117 Cal.Rptr. 163].)" (*People* v. *Garcia, supra,* at p. 350, italics in original.)

In *People* v. *Searle* (1989) 213 Cal.App.3d 1091 [261 Cal.Rptr. 898], the sentencing judge found as a California Rules of Court, rule 421(a)(2)

aggravating circumstance that the defendant had been armed with a firearm at the time of the commission of the crime of selling cocaine. The evidence showed that the defendant had been selling cocaine from his car, and when he was arrested the officers found "a loaded .357 Ruger stored in an unlocked compartment in the back of appellant's car." (213 Cal.App.3d at p. 1095.) Appellant was the only person inside the car at the time of the arrest. The appellate court rejected appellant's argument that he was not "armed" with the gun and that "it was merely stored in his car." (*Id.* at p. 1099.) The court stated:

"In *People* v. *Garcia* (1986) 183 Cal.App.3d 355 [228 Cal.Rptr. 87], this court concluded that a person is 'armed,' under rule 421(a)(2), if he carries the weapon or *has it available for use.* We noted: 'The underlying intent of the Legislature is to deter persons from creating *a potential for death or injury resulting from the very presence of a firearm at the scene of the crime.*' (*Id.* at p. 350, italics in original.) In this case, not only was the gun located in the car from which appellant sold drugs it was also loaded. Accordingly, we conclude that the gun was available for use and therefore the trial court properly relied upon rule 421(a)(2) to aggravate appellant's sentence." (*People* v. *Searle, supra,* 213 Cal.App.3d at p. 1099.)

In *People* v. *Wandick* (1991) 227 Cal.App.3d 918 [278 Cal.Rptr. 274], the defendant was arrested when officers executing a search warrant found cocaine in various rooms of the house. The defendant was found in the master bedroom, where two guns were also found. One was "in a holster hanging on the bedpost" (*id.* at p. 921) and another was in the drawer of a portable closet. The jury was instructed that " 'the term armed with a firearm means knowingly to carry a firearm or have it available as a means of offense or defense.' " (*Id.* at p. 927.) The jury found the defendant to have been so armed, and we ruled that the trial court's instruction was proper. (*Ibid.*)

In each of the cited cases, the defendant was the only individual involved; therefore, the distinction between being "armed" personally and being "armed" vicariously was not addressed. However, clearly an individual would be "personally" armed if he carried a gun on him such as in his waistband. Appellant does not dispute this and argues that one is *only* personally armed when one has the weapon on his person.

Appellant reaches this conclusion based on an analogy to Penal Code section 1203.06 which provides in pertinent part:

"Notwithstanding the provisions of section 1203:

"(a)   Probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons:

"...................................

"(2)   Any person previously convicted of a felony specified in paragraphs (i) through (viii) of paragraph (1), or assault with intent to commit murder under former Section 217, who is convicted of a subsequent felony and who was personally armed with a firearm at any time during its commission or attempted commission or was unlawfully armed with a firearm at the time of his or her arrest for the subsequent felony.

"...................................

"(4)   As used in subdivision (a) 'armed with a firearm' means to knowingly carry a firearm as a means of offense or defense."

Thus appellant equates personally armed with knowingly *carry*. However, we conclude Meza imposes on Penal Code section 12022, subdivision (c) an interpretation from Penal Code section 1203.06 that is specific to the latter statute. Nothing in Penal Code section 12022, subdivision (c) specifies that being armed means the firearm must be "carried on your person." The interpretation of armed within the meaning of Penal Code section 12022, subdivision (a) has consistently included not only carrying, but having it available as a means of offense or defense. This is consistent with the legislative intent behind the arming enhancement as we discussed in *Wandick* citing to *Reaves*.

■■■   "The desire of the Legislature to prevent death and injury as a result of the involvement of firearms in the commission of crime is manifest from the various provisions for increased punishment for crimes where firearms are in some way involved. The underlying intent of the Legislature is to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime. Thus there is aggravated punishment for a person who is armed with a deadly weapon even though no use is made of the weapon. A person is armed with a deadly weapon when he simply carries such weapon *or has it available for use* in either offense or defense." (*People* v. *Wandick, supra*, 227 Cal.App.3d 918, 927-928, quoting *People* v. *Reaves, supra*, 42 Cal.App.3d 852, 856-857, italics added in *Wandick*.)

■■■   We discern the threat presented by a firearm increases in direct proportion to its accessibility. Obviously, a firearm that is available for use as a weapon creates the very real danger it will be used. Thus, punishment increases in terms of the relative danger—from availability to actual use. (Pen. Code, §§ 12022.5 or 12022, subd. (b).) It would be ludicrous to

conclude a criminal could have a gun on the console of his vehicle or on the table in front of him and find that this did not meet the definition of armed. He has insured that a firearm is as accessible to him as if he had placed it in a holster on his hip. It is the availability—the ready access—of the weapon that constitutes arming.

We view the term "personally armed" as used in Penal Code section 12022, subdivision (c) as referring to the individual who has the firearm on his person or available for offensive or defensive use. This separates the responsibility from those who would be vicariously liable from those who are personally armed.

In *People* v. *Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182], the court discussed the word "personally" within the context of arming and use provisions. Discussing Penal Code sections 12022 subdivision (a), 12022 subdivision (b), 12022.5 and 12022.7 the court concluded that the Legislature intended the word "personally" to limit the class of persons subject to the enhancements to "those who themselves commit the prohibited conduct." (*People* v. *Cole, supra,* 31 Cal.3d at p. 576.)

Thus, we conclude the prohibited conduct is carrying the firearm or having it available for offensive or defensive use. "Personally" refers to the person who engages in this prohibited conduct. Under Penal Code sections 12022, subdivision (a) and 12022, subdivision (d) the responsibility of others who do not personally engage in the prohibited conduct is vicarious.

Therefore, we reject Meza's first contention that "personally armed" does not include one who has a firearm available for offensive or defensive use but does not have it on his person.

### Two people can be personally armed with one firearm

Under the facts before us, Mendival does not challenge that aspect of the jury's findings that he was personally armed. The jury, however, concluded Meza was personally armed with the same firearm. ■ Meza challenges the proposition that two people can be personally armed with the same weapon. Can two people be personally armed with the same firearm? Certainly they cannot both carry it on their person at the same time. However, we see no basis to limit applicability of the Penal Code section 12022, subdivision (c) enhancement to one individual if both individuals have a firearm available for their ready access. The firearm is there for purposes of offensive or defensive use. It represents the same threat no matter which person grabs it. Ownership has no bearing, in our view, on

culpability or degree of threat. Therefore, we view the question of whether a firearm is knowingly available for use in an offensive or defensive manner when it is accessible to more than one person to be a jury question. The issue to be resolved being whether the position of the firearm rendered it available for offensive or defensive use to only one or both of the coparticipants.

The instruction used the term "available" which has a commonly held meaning.

" 'Available' . . . adj. 1. that one can avail himself of; that can be used; usable.

"2. that can be got, had, or reached; handy; accessible . . . ." (Webster's New World Dict. (2d college ed. 1982) p. 96.)

We conclude the instruction adequately informed the jury in readily understandable terms that to find Meza was personally armed they had to conclude:

1. That he had knowledge the firearm was there, and

2. That the firearm was in a position that he (Meza) had access to it for offensive or defensive use.

The jury resolved these issues against Meza and we find no evidentiary basis to conclude that the jury's resolution was unsupported by the record.

I. B.-III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

As to appellant Meza, the judgment is affirmed save and except that the concurrent sentences on counts two and three are ordered stayed. As to appellant Rodriguez, the judgment is affirmed save and except that the concurrent sentence on count two is stayed. As to appellant Mendival the

---

*See footnote, *ante*, page 562.

judgment is affirmed save and except that the current sentences on counts two and three are ordered stayed.

Harris, J., and Buckley, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 26, 1992.