Filed 9/6/16  P. v. Kelly CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B261043 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA050993) |
| v. | |
| SANTANA KELLY, | |
| Defendant and Appellant. | |

---

APPEAL from an order of the Superior Court of Los Angeles County.  William C. Ryan, Judge.  Reversed with directions.

Dee A. Hayashi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Santana Kelly appeals from the trial court's denial of his petition for resentencing under the Three Strikes Reform Act of 2012. Defendant contends, inter alia, the record of his conviction does not support a finding that he was armed during the commission of the offense for which he received a third strike term. We agree.

## BACKGROUND

**The commitment offense**

In June of 2002, Kelly was charged with committing a second degree robbery on April 13, 2000, two first degree robberies on April 15, 2000, an assault with a deadly weapon and an assault with a firearm on one of the robbery victims on April 15, 2000, and evading a police officer (Veh. Code, § 2800.2, subd. (a)), a felony, on April 18, 2000. It was alleged that Kelly had three prior or serious felonies within the meaning of the "Three Strikes" law.

The robberies and aggravated assaults apparently involved Kelly and Terrell Brown following the victims home from Hollywood Park Casino and robbing them at gunpoint. In its order denying the petition for resentencing, the trial court summarized the facts pertaining to the evading charge: "On April 18, 2000, Kelly and Brown returned to Hollywood Park Casino, but were recognized by the head of security, Gregory Held ('Held'). Held contacted the Inglewood Police Department. When Kelly and Brown came out to the parking and entered their car, Officer[s] Martino Belgarde and David Burnett pulled their patrol car up to . . . Kelly's car. At the same time, Officer Belgarde observed Brown holding a blue steel handgun pointed in the direction of Kelly at chest level. [Record citation.] When the officers pulled up to Kelly's vehicle, Kelly drove off immediately. A chase ensued for four to five miles through residential areas before the chase came to a stop. When Kelly stopped the car, both fled on foot. Brown was apprehended, but Kelly was not arrested until another date. [¶] After the chase and arrests concluded, Officer Burnett searched Kelly's vehicle and recovered a .45 caliber semi-automatic handgun from the trunk of Kelly's car."

2

The jury convicted Kelly of felony evading and hung on all other charges. The trial court found the strike allegations to be true and, on the prosecutor's motion, all remaining charges were dismissed. The trial court sentenced Kelly to a third strike term of 25 years to life.

**The petition for resentencing**

In January of 2013 defendant filed a petition for resentencing pursuant to Penal Code section 1170.126,[1] enacted as part of the Three Strikes Reform Act of 2012. Section 1170.126 permits a person serving an indeterminate life sentence under the Three Strikes law for conviction of a felony or felonies that are not defined as serious and/or violent under section 667.5, subdivision (c), or section 1192.7, subdivision (c) to file a petition for recall of sentence. (§ 1170.126, subd. (b).) Another requirement of eligibility for resentencing is "[t]he inmate's current sentence was not imposed for any of the offenses appearing in" section 667, subdivision (e)(2)(C)(i) to (iii) or section 1170.12, subdivision (c)(2)(C)(i) to (iii). (§ 1170.126, subd. (e)(2).) For purposes of this appeal, the only pertinent portion of the aforementioned subdivisions is "During the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

The trial court initially issued an order to show cause regarding Kelly's petition for resentencing. The district attorney opposed resentencing on the ground Kelly was ineligible for resentencing because he was armed during the commission of his current offense, as well as unsuitable for relief under section 1170.126, subdivision (f), which empowers the trial court to refuse resentencing if the trial court, "in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." After receiving numerous responses and supplemental oppositions, the

---

[1] Undesignated statutory references are to the Penal Code.

3

court conducted a hearing during which the parties submitted exhibits and argued their positions.

A little over a month later, the court issued its written decision denying Kelly's petition. The court stated it "examined the evidence at trial, including the trial transcript of the testimony given by the witnesses and officers, in order to determine the eligibility of the Petitioner." It concluded Kelly was ineligible for resentencing because he was armed with the gun Brown pointed at him during the commission of the evasion. The court reasoned that Kelly was armed because he was participating in a crime in which his coprincipal was armed, "Kelly could have easily reached over and obtained the gun if he desired to," and the evidence supporting the robberies and aggravated assaults showed that "the gun held by Brown and the one found in the trunk[] were for offensive use by both Kelly and Brown to commit robberies."

## DISCUSSION

### 1. Trial court's reliance on dismissed robbery and assault charges

Kelly first contends that although the court was allowed to look at the entire record of his conviction, including the trial transcript, it was limited to identifying the factual findings supporting the crime of which he was convicted and could not make new findings regarding factual disputes the jury did not have to resolve. He notes that the trial court based its ruling, in part, on "evidence pertaining solely to the charges of robbery, assault with a deadly weapon, and assault with a firearm on which the jury, as trier of fact, did not make any findings, leading to dismissal of those charges." We agree that the trial court improperly went beyond the record of Kelly's conviction by considering the evidence pertaining to those offenses.

"[A] trial court determining eligibility for resentencing under the Act is not limited to a consideration of the elements of the current offense and the evidence that was presented at the trial (or plea proceedings) at which the defendant was convicted. Rather, the court may examine relevant, reliable, admissible portions of the record of conviction to determine the existence or nonexistence of disqualifying factors." (*People v. Blakely*

4

(2014) 225 Cal.App.4th 1042, 1063.) However, "eligibility is *not* a question of fact that requires the resolution of disputed issues. The *facts* are limited to the record of conviction underlying a defendant's commitment offense; the statute neither contemplates an evidentiary hearing to establish these facts, nor any other procedure for receiving new evidence beyond the record of conviction. [Citation.] What the trial court decides is a question of *law*: whether the facts in the record of conviction are the proper subject of consideration, and whether they establish eligibility." (*People v. Oehmigen* (2014) 232 Cal.App.4th 1, 7.) The eligibility requirement in issue in this case does not pertain to the identity of the current offense or a prior offense, but instead refers "to something that occurs '[d]uring the commission of the current offense,' that being 'the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) By referring to those facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which petitioner was convicted." (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1332.)

The trial court's decision was expressly based, in part, on the evidence introduced at trial regarding the robberies and aggravated assaults committed three and five days before the commitment offense. The court stated in its written decision, "[I]n two separate prior occasions [fn. omitted], both close in proximity to time, Kelly and Brown acted in concert to rob three separate victims after following them home from Hollywood Park Casino. In both incidents, Kelly and Brown robbed the victims at gunpoint. [Fn. omitted.] A reasonable inference can be made from both the proximity in time of the arrest date and the two prior robberies that having guns in the car was not a mere coincidence, but the gun held by Brown and the one found in the trunk, were for offensive use by both Kelly and Brown to commit robberies."

By relying upon the evidence regarding the robberies and assaults committed three and five days before the evading, the trial court not only considered matters outside the

record of Kelly's *evading conviction*, but also violated the terms of the governing statutes. Section 1170.126, subdivision (e)(2) provides that an inmate is eligible for resentencing if, inter alia, "The inmate's *current sentence* was not imposed for any of the offenses appearing in" section 667, subdivision (e)(2)(c)(iii) or section 1170.12, subdivision (c)(2)(C)(iii). (Italics added.) Section 667, subdivision (e)(2)(c)(iii) and section 1170.12, subdivision (c)(2)(C)(iii) provide, "*During the commission of the current offense*, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (Italics added.) Kelly's current offense— the source of his current sentence—was evading, not the robberies and aggravated assaults allegedly committed three and five days earlier. The robberies and aggravated assaults were not something that occurred during the evading, nor were they the circumstances attendant to the evading. They were irrelevant to the issue of whether Kelly was armed during the commission of the evading days after the alleged other offenses were complete. The trial court therefore erred by considering evidence that defendant used a gun in the commission of robberies and assaults days earlier.

## 2. Sufficiency of evidence

Kelly also contends that substantial evidence does not support the trial court's finding that he was armed during the evading. We agree.

Although the trial court employed the correct definition of "armed with a firearm" as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), i.e., having a firearm available for offensive or defensive use (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1029 (*Osuna*)), it committed a significant legal error that ultimately skewed its evaluation of the evidence. The court's written decision states, "A defendant is armed with a firearm if he participates as a principal in a crime in which one or more principals is armed," citing *People v. Paul* (1998) 18 Cal.4th 698, 706 (*Paul*). Later, the court applied this theory of vicarious liability: "Since Brown was armed with a gun, Kelly who was also participating in the crime as a principal was also armed. See *Paul*, *supra* at 706." Crucially, however, the trial court failed to consider that *Paul*

pertained to liability under the armed principal provisions of section 12022, subdivision (a)(1).[2]

The court in *Paul*, *supra*, 18 Cal.4th 698, quoted and discussed section 12022, subdivision (a)(1), stating, "In other words, a defendant is 'armed with a firearm' within the meaning of this subdivision if he or she participates as a principal in a crime in which one or more principals is armed." (*Paul*, at p. 706.) In contrast to liability for a section 12022, subdivision (a)(1) enhancement, the provisions of section 667, subdivision (e)(2)(c)(iii) and section 1170.12, subdivision (c)(2)(C)(iii) address only the defendant's conduct: "During the commission of the current offense, *the defendant* used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." Vicarious liability under weapons enhancement statutes is based upon the express language of the enhancement statute providing for such liability, not upon a general principle of accomplice liability. (See, e.g., §§ 12022, subd. (a)(1), 12022.53, subd. (e).) The court erred by imputing Brown's armed status to Kelly.

In addition, the court relied on speculation and highly distinguishable authority to conclude that Kelly was armed. It stated: "The officer observed the gun in the hands of Brown who was in the passenger seat. Kelly was in the driver's seat of the vehicle with Brown. Kelly could have easily reached over and obtained the gun if he desired to. Another possibility is that Brown could also have easily handed the gun over to Kelly. Like [*People v.*] *Mendival* [(1992) 2 Cal.App.4th 562 (*Mendival*)] and *Paul*, the gun that . . . Officer Belgarde observed was in the passenger compartment of the vehicle with

---

[2] Section 12022, subdivision (a)(1) provides: "Except as provided in subdivisions (c) and (d), a person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment pursuant to subdivision (h) of Section 1170 for one year, unless the arming is an element of that offense. *This additional term shall apply to a person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm.*" (Italics added.)

Brown and Kelly and not in the trunk where the handgun would not be easily accessible. Since Brown was armed with a gun, Kelly who was also participating in the crime as a principal was also armed."

*Mendival*, *supra*, 2 Cal.App.4th 562, dealt with a section 12022, subdivision (c) enhancement for being personally armed in the commission of certain narcotics offenses. There, two men who were transporting a large quantity of cocaine in a car were stopped by police. The court described the situation: "In the car were the driver, Meza, and the passenger, Mendival. Lying on the front floorboard of the car was an unloaded handgun." (2 Cal.App.4th at p. 567.) Section 12022, subdivision (c) enhancements were found true as to both Meza and Mendival. (2 Cal.App.4th at p. 564.) On appeal, Meza challenged the enhancement on several grounds, including "the proposition that two people can be personally armed with the same weapon." (*Id.* at p. 574.) The appellate court concluded this was possible: "[W]e see no basis to limit applicability of the Penal Code section 12022, subdivision (c) enhancement to one individual if both individuals have a firearm available for their ready access. The firearm is there for purposes of offensive or defensive use. It represents the same threat *no matter which person grabs it*. . . . Therefore, we view the question of whether a firearm is knowingly available for use in an offensive or defensive manner *when it is accessible to more than one person* to be a jury question. The issue to be resolved being *whether the position of the firearm rendered it available for offensive or defensive use to only one or both of the coparticipants*." (2 Cal.App.4th at pp. 574–575, italics added.)

Here, the gun was not lying on the floorboard, seat, or dashboard between Kelly and Brown, free for either one to grab. It was instead held by Brown and pointed at Kelly. The position of the gun in Brown's hands rendered it *unavailable* and *inaccessible* to Kelly for offensive or defensive use. While it is *possible* that "Kelly could have easily reached over and obtained the gun" or Brown could "have easily handed the gun over to Kelly," it is also possible Brown could have shot Kelly, refused to hand over the gun, hit Kelly over the head with the gun, or thrown the gun out the car window. All of these

8

possibilities, including those relied upon by the trial court, are devoid of evidentiary support and are nothing more than speculation.  Viewing the record in the light most favorable to the trial court's order, we conclude the order is not supported by substantial evidence, whether the applicable standard is proof beyond a reasonable doubt (*People v. Arevalo* (2016) 244 Cal.App.4th 836, 853) or merely a preponderance of the evidence (*Osuna*, *supra*, 225 Cal.App.4th at p. 1040).  We therefore reverse the order denying Kelly's petition on the basis of ineligibility and remand for the discretionary determination of whether resentencing Kelly would pose an unreasonable risk of danger to public safety.  (§ 1170.126, subd. (f).)

## DISPOSITION

The order denying Kelly's petition for resentencing is reversed.  The matter is remanded for the trial court to determine whether resentencing Kelly would pose an unreasonable risk of danger to public safety.  (Pen. Code, § 1170.126, subd. (f).)

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

9